## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FERRING PHARMACEUTICALS INC.,<br>FERRING INTERNATIONAL CENTER S.A.,<br>FERRING B.V., and<br>POLYPEPTIDE LABORATORIES A/S<br><br>Plaintiffs,<br><br>v.<br><br>FRESENIUS KABI USA, LLC, and<br>FRESENIUS KABI AG,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Ferring Pharmaceuticals Inc. ("Ferring Pharma"), Ferring International Center

S.A. ("FICSA"), Ferring B.V. (collectively, "Ferring"), and Polypeptide Laboratories A/S ("PPL

A/S") (together with Ferring, "Plaintiffs") bring this action against Defendants Fresenius Kabi

USA, LLC ("Fresenius USA") and Fresenius Kabi AG ("Fresenius AG") (collectively,

"Defendants") and allege as follows:

## OVERVIEW

1.      This is an action for infringement of United States Patent Number 9,579,359 ("the

'359 patent"), United States Patent Number 9,415,085 ("the '085 patent"), United States Patent

Number 8,841,081 ("the '081 patent"), United States Patent Number 9,877,999 ("the '999

patent"), and United States Patent Number 8,828,938 ("the '938 patent") (collectively, the

"patents in suit") under the Patent Laws of the United States, Title 35 of the United States Code,

§ 100 *et seq.* and for a declaratory judgment of infringement under 28 U.S.C. §§ 2201 and 2202.

2.      This action arises out of Fresenius USA's submission of Abbreviated New Drug Application ("ANDA") No. 211999 ("Fresenius's ANDA") under Section 505(j) of the Federal Food, Drug, and Cosmetic Act ("the Act"), 21 U.S.C. § 355(j), seeking U.S. Food and Drug Administration ("FDA") approval to commercially manufacture, use, or sell a generic version of Ferring's FIRMAGON® (degarelix for injection) ("Fresenius's ANDA Product") prior to the expiration of the '359 patent and the '085 patent.

## THE PARTIES

3.      Plaintiff Ferring Pharma is a private Delaware corporation having its principal place of business at 100 Interpace Parkway, Parsippany, New Jersey 07054.

4.      Plaintiff FICSA is a Swiss private limited liability company having its offices at Ch. de la Vergognausaz 50, 1162 Saint-Prex, Switzerland.

5.      Plaintiff Ferring B.V. is a Dutch private limited liability company having its offices at Polaris Avenue 144, Hoofddorp, 2132 JX, Netherlands.

6.      Plaintiff PPL A/S is a company organized and existing under the laws of Denmark, having its registered offices at Herredsvejen 2 Hillerod, 3400 Denmark.

7.      On information and belief, Defendant Fresenius USA is a corporation organized and existing under the laws of Delaware, with its principal place of business at Three Corporate Drive, Lake Zurich, Illinois 60047.

8.      On information and belief, Defendant Fresenius AG is a corporation organized under the laws of Germany, with its principal place of business at Else-Kröner-Straße 1, 61352 Bad Homburg, Germany.

9.      On information and belief, Fresenius USA is wholly-owned by Fresenius Kabi Holding, LLC, which is wholly-owned by Fresenius AG.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

11.     This Court has personal jurisdiction over Fresenius USA because, on information and belief, it is organized under the laws of the State of Delaware and because Fresenius USA is registered to conduct business within the State of Delaware (File No. 4373141). *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (accessed on March 10, 2020). On information and belief, Fresenius USA maintains as a registered agent for service of process Corporation Service Company with an address at 251 Little Falls Drive, Wilmington, Delaware 19808.

12.     This Court has personal jurisdiction over Fresenius AG under Fed. R. Civ. P. 4(k) because, on information and belief, Fresenius AG is organized under the laws of Germany and because, on information and belief, Fresenius AG maintains continuous and systematic contacts with Delaware through its United States subsidiary Fresenius USA, which is organized under the laws of the State of Delaware. This Court also has personal jurisdiction over Fresenius AG because at least one of the provisions under Del. Code Ann. tit. 10, § 3104, is satisfied. On information and belief, Fresenius AG "[t]ransacts any business or performs any character of work or service in the State," § 3104(c)(1), "[c]ontracts to supply services or things in this State," § 3104(c)(2), "[c]auses tortious injury in the State by an act or omission in this State," § 3104(c)(3), and "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State" while "regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct in the State or deriv[ing] substantial revenue from services, or things used or consumed in the State," § 3104(c)(4).

13.    This Court also has personal jurisdiction over Fresenius USA and Fresenius AG because this suit arises out of and relates to their activities that are, and will be, directed to the State of Delaware. On information and belief, following any FDA approval of Fresenius's ANDA, Defendants will market and sell Fresenius's ANDA Product that is the subject of the infringement claims in this action in the State of Delaware and throughout the United States, including in this Judicial District.

14.    On information and belief, Defendants, directly and through their subsidiaries, affiliates, or agents, are in the business of manufacturing generic pharmaceuticals that they distribute or have distributed in the State of Delaware and throughout the United States.

15.    On information and belief, Fresenius USA, acting in concert with Fresenius AG, prepared and filed the Fresenius ANDA with the intention of seeking to market Fresenius's ANDA Product nationwide, including within this Judicial District.

16.    On information and belief, Defendants plan to market and sell Fresenius's ANDA Product that is the subject of the infringement claims in this action in the State of Delaware, and throughout the United States, including within this Judicial District; list Fresenius's ANDA Product on the State of Delaware's prescription drug formulary; and seek Medicaid reimbursement for sales of Fresenius's ANDA Product in the State of Delaware, either directly or through one or more of Defendants' subsidiaries, agents, and/or alter egos.

17.    On information and belief, Defendants know and intend that, if approved, Fresenius's ANDA Product will be distributed and sold in Delaware and will thereby displace sales of FIRMAGON®, causing injury to Plaintiffs. On information and belief, Defendants intend to take advantage of their established channels of distribution in Delaware for the sale of Fresenius's ANDA Product.

18.     This Court also has personal jurisdiction over all Defendants by virtue of, *inter alia*, their activities that were purposefully directed to the State of Delaware. On information and belief, Fresenius USA, in concert with Fresenius AG, filed Fresenius's ANDA seeking approval to market Fresenius's ANDA Product prior to the expiration of the '359 patent and '085 patent along with a Paragraph IV Certification regarding the '359 patent and '085 patent and sending its Notice Letter to Ferring Pharma, which is incorporated in Delaware. Thus, the consequences of Defendants' actions were (and will be) suffered in Delaware, as Defendants knew or should have known.

19.     This Court also has personal jurisdiction over Defendants because their contacts within this Judicial District are continuous and systematic. On information and belief, Fresenius USA, in collaboration with Fresenius AG, develops, manufactures, seeks approval for, and sells FDA-approved generic pharmaceutical drugs that are regularly marketed, distributed, and sold in Delaware and throughout the United States. Thus, on information and belief, Defendants do substantial business in Delaware, derive substantial revenue from Delaware, and engage in other persistent courses of conduct in Delaware. These continuous and systematic contacts, including, but not limited to, those described above and below, are more than sufficient for this Court to exercise personal jurisdiction over Defendants.

20.     Fresenius USA regularly invokes the jurisdiction of the courts of this judicial district by filing patent infringement actions concerning FDA-approved drug products in this judicial district. *See, e.g.*, *Fresenius Kabi USA, LLC et al. v. Sagent Pharmaceuticals, Inc.*, C.A. No. 17-11-LPS, D.I. 1 (D. Del. Jan. 4, 2017); *Fresenius Kabi USA, LLC v. B. Braun Medical Inc.*, C.A. No. 16-250-RGA, D.I. 1 (D. Del. Apr. 11, 2016); *Fresenius Kabi USA, LLC v. Maia Pharmaceuticals, Inc.*, C.A. No. 16-237-GMS, D.I. 1 (D. Del. Apr. 7, 2016).

21.     Fresenius USA has not contested personal jurisdiction or venue in patent litigations concerning FDA-approved drug products in this judicial district. *See, e.g.*, *Millennium Pharmaceuticals, Inc. v. Fresenius Kabi USA, LLC et al*, C.A. No. 19-2252-CFC, D.I. 1, 8 (D. Del. Feb. 10, 2020); *Pharmacyclics LLC v. Fresenius Kabi USA, LLC*, C.A. No. 18-192-CFC, D.I. 80, 95 (D. Del. Feb. 11, 2019); *Spectrum Pharmaceuticals, Inc. et al v. Fresenius Kabi USA, LLC*, C.A. No. 18-1533-CFC, D.I. 1, 14 (D. Del. Nov. 8, 2018); *Merck Sharp & Dohme Corp. v. Fresenius Kabi USA, LLC,* C.A. No. 18-196-MN, D.I. 1, 6 (D. Del. Mar. 16, 2018); *Onyx Therapeutics, Inc. v. Fresenius Kabi USA, LLC et al.*, C.A. No. 16-1012-LPS, D.I. 1, 19 (D. Del. Jan. 6, 2017); *Teva Pharmaceuticals International GmbH et al. v. Fresenius Kabi USA, LLC*, C.A. No. 17-1201-CFC, D.I. 1, 10 (D. Del. Sept. 15, 2017).

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b) because Fresenius USA is incorporated, and thus resides, in Delaware and because Fresenius AG is incorporated in Germany and may be sued in any judicial district in the United States in which Fresenius AG is subject to the Court's personal jurisdiction.

## THE PATENTS IN SUIT

### The '359 Patent

23.     On February 28, 2017, the United States Patent and Trademark Office ("PTO") duly and legally issued the '359 patent, which bears the title "Method of Treating Prostate Cancer with GnRH Antagonist" and names Tine Kold Olesen, Bo-Eric Persson, Per Cantor, Egbert A. van der Meulen, and Jens-Kristian Slott Jensen as inventors. A true and correct copy of the '359 patent is attached as Exhibit A.

24.     Ferring B.V. is the owner by assignment of the '359 patent, and Ferring Pharma is an exclusive licensee of the '359 patent.

25.    The '359 patent has one independent claim. Independent claim 1 of the '359 patent states:

> **1**. A method of treating prostate cancer in a subject with a reduced likelihood of causing a testosterone spike or other gonadotrophin releasing hormone (GnRH) agonist side-effect comprising:
> administering an initial dose of 160-320 mg of degarelix to the subject, wherein the initial dose is administered as two subcutaneous injections; and
> administering a maintenance dose of 60-160 mg of degarelix to the subject once every 20-36 days there-after, wherein the maintenance dose results in a testosterone suppression below 0.5 ng/mL;
> thereby treating prostate cancer in the subject with a reduced likelihood of causing a testosterone spike or other GnRH agonist side effect.

26.    In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '359 patent is listed in the FDA's APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS (also known as the "Orange Book") as covering FIRMAGON®.

### The '085 Patent

27.    On August 16, 2016, the PTO duly and legally issued the '085 patent, which bears the title "Method of Treating Prostate Cancer with GnRH Antagonist" and names Egbert A. van der Meulen, and László Balázs Tankó as inventors. A true and correct copy of the '085 patent is attached as Exhibit B.

28.    Ferring B.V. is the owner by assignment of the '085 patent, and Ferring Pharma is an exclusive licensee of the '085 patent.

29.    The '085 patent has one independent claim. Independent claim 1 of the '085 patent states:

> 1. A method of treating prostate cancer in a subject, comprising:
>   selecting a subject with a history of at least one cardiovascular event and prostate cancer;
>   administering degarelix to the subject, wherein administration of degarelix to the subject decreases the frequency of an additional cardiovascular event in the subject as compared to the frequency of an additional cardiovascular event upon treatment with a gonadotrophin releasing hormone (GnRH) agonist in a subject with a history of at least one cardiovascular event,
>   wherein the at least one cardiovascular event is chosen from myocardial infarction, ischemic heart disease, ischemic stroke, hemorrhagic stroke, and other arterial thrombotic/embolic events.

30.    In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '085 patent is listed in the Orange Book as covering FIRMAGON®.

**The '081 Patent**

31.    On September 23, 2014, the PTO duly and legally issued the '081 patent, which bears the title "Method of Treating Metastatic Stage Prostate Cancer" and names Bo-Eric Persson as the inventor. A true and correct copy of the '081 patent is attached as Exhibit C.

32.    FICSA is the owner by assignment of the '081 patent, and Ferring Pharma is an exclusive licensee of the '081 patent.

33.    The '081 patent has two independent claims. For example, independent claim 15 of the '081 patent states:

> **15.** A method of treating metastatic stage prostate cancer in a subject, the method comprising:
>
> identifying a subject with metastatic stage prostate cancer comprising measuring the subject's baseline serum alkaline phosphatase (S-ALP) level and measuring the subject's baseline prostate-specific antigen (PSA) level; and
>
> reducing the subject's S-ALP level with respect to the baseline level by
>
> administering an initial dose of degarelix ranging from about 160 mg to about 320 mg to the subject; and
>
> administering at least one maintenance dose of degarelix ranging from about 60 mg to about 160 mg to the subject approximately 20 days to 36 days after the previous dose of degarelix for a duration of treatment.

**The '999 Patent**

34.      On January 30, 2018, the PTO duly and legally issued the '999 patent, which bears the title "Method for Treating Metastatic Stage Prostate Cancer" and names Bo-Eric Persson as the inventor. A true and correct copy of the '999 patent is attached as Exhibit D.

35.      FICSA is the owner by assignment of the '999 patent, and Ferring Pharma is an exclusive licensee of the '999 patent.

36.      The '999 patent has five independent claims. For example, independent claim 15 of the '999 patent states:

9

> **15.** A method of treating a subject with metastatic prostate cancer having a serum alkaline phosphatase (S-ALP) level above a normal range for S-ALP prior to treatment, the method comprising:
>
> > testing the prostate-specific antigen (S-ALP) and a prostate specific antigen (PSA) of a potential subject;
> >
> > selecting the potential subject for treatment if the subject's S-ALP is above the normal range for S-ALP and the PSA level is greater than or equal to 50 ng/mL;
> >
> > administering an initial dose of degarelix ranging from about 160 mg to about 320 mg to the subject; and
> >
> > administering at least one maintenance dose of degarelix ranging from about 60 mg to 160 mg to the subject, wherein the at least one maintenance dose is administered approximately 20 to 36 days after the previous dose of degarelix for a duration of treatment ranging from 20 days to 450 days; and further wherein the S-ALP level is reduced for the duration of treatment.

**The '938 Patent**

37.    On September 9, 2014, the PTO duly and legally issued the '938 patent, which bears the title "Method for the Manufacture of Degarelix" and names Haixiang Zhang, Jens Fomsgaard, and Gunnar Staerkaer as inventors. A true and correct copy of the '938 patent is attached as Exhibit E.

38.    PPL A/S is the owner by assignment of the '938 patent, and FICSA and its affiliates are an exclusive licensee of the '938 patent.

39.    The '938 patent has one independent claim. Independent claim 1 of the '938 patent states:

> 1. A method of manufacture of degarelix, Ac-D-2Nal-D-Phe(4Cl)-D-3Pal-Ser-4Aph(Hor)-D-4Aph(Cbm)-Leu-ILys-Pro-D-Ala-NH2, wherein Aph is 4-amino-phenylaniline, (Hor) is (L-hydroorotyl), and (Cbm) is (carbamoyl), containing 0.3% by weight or less of Ac-D-2Nal-D-Phe(4Cl)-D-3Pal-Ser-X-D-4Aph(Cbm)-Leu-ILys-Pro-D-Ala-NH2, wherein X is 4-([2-(5-hydantoyl)]acetylamino)-phenylalanine, comprising step-wise providing a solution of an amino acid or peptide in which an α-amino group is protected by Fmoc; contacting a solid support having an amino group linked thereto with the solution in the presence of reagent which forms a peptide bond between a carboxyl group of the dissolved amino acid or peptide and the amino group linked to the support for a time sufficient to form said peptide bond; removing Fmoc by contacting the support with an organic base selected from the group consisting of piperidine and C-alkyl substituted piperidine, wherein the alkyl is branched or straight chained and has from 1 to 6 atoms, in an organic solvent.

## NATURE OF THE ACTION

40.     Ferring Pharma is the holder of New Drug Application ("NDA") No.  022201 for FIRMAGON® (degarelix acetate) for injection, 80 mg and 120 mg.

41.     On December 24, 2008, the United States Food and Drug Administration ("FDA") approved NDA No. 022201 for the manufacture, marketing, and sale of FIRMAGON® for treatment of patients with advanced prostate cancer.

42.     Ferring Pharma has sold FIRMAGON® under NDA No. 022201 since its approval.

43.     On information and belief, Fresenius USA, in concert with Fresenius AG, filed Fresenius's ANDA seeking approval to engage in the commercial manufacture, use, or sale in the United States of Fresenius's ANDA Product before the expiration of the '359 patent and the '085 patent.

44.     On information and belief, Fresenius USA and Fresenius AG acted collaboratively and in concert in the preparation and submission of the Fresenius ANDA and

continue to act collaboratively in pursuing FDA approval of Fresenius's ANDA and seeking to market Fresenius's ANDA Product.

45.    On information and belief, Fresenius USA, in concert with Fresenius AG, made and included in Fresenius's ANDA a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification") that, in its opinion and to the best of its knowledge, the '359 patent and the '085 patent are invalid, unenforceable, and/or will not be infringed by Fresenius's ANDA Product.

46.    On February 11, 2020 and February 12, 2020, Ferring Pharma and Ferring B.V., respectively, received a letter from Fresenius dated February 10, 2020, purporting to be a Notice of Certification for Fresenius's ANDA ("Fresenius's Notice Letter") under Section 505(j)(2)(B)(ii) of the Act and 21 C.F.R. § 314.95(c)(1). Fresenius's Notice Letter enclosed a statement of alleged factual and legal bases that the '359 patent and '085 patent are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of Fresenius's ANDA Product (the "Detailed Statement").

47.    The Detailed Statement does not allege or provide any factual bases to assert non-infringement of claims 1-5, 7, 9-13 of the '359 patent. The Detailed Statement also does not allege or provide any factual bases to assert that the '359 patent or the '085 patent is unenforceable.

48.    FDA regulations require that approved drug products include prescribing information reciting the FDA-approved indication(s) for the drug and related instructions for healthcare providers to safely and effectively administer the drug. *See* 21 C.F.R. § 201.56(a)(1)-(3), (d)(1); 21 C.F.R. § 201.57(a)-(c).

49.    Consistent with FDA regulations, the package insert for FIRMAGON® includes prescribing information that recites the FDA-approved indication for FIRMAGON® and provides instructions for physicians and patients to safely and effectively administer FIRMAGON®.

50.    Attached as Exhibit F is a true and correct copy of the February 2020 FIRMAGON® package insert, which is the current version of the FIRMAGON® package insert.

51.    FIRMAGON® is indicated for the treatment of patients with advanced prostate cancer. (Ex. F at § 1.)

52.    The recommended dosing information for FIRMAGON is provided in Section 2.1 of the FIRMAGON® package insert as follows:

| 2.1 | Dosing information | |
|---|---|---|

FIRMAGON is administered as a subcutaneous injection in the abdominal region only at the dosages in Table 1 below.

**Table 1: FIRMAGON Recommended Dosages**

| Starting Dosage | Maintenance Dosage – Administered once every 28 days |
|---|---|
| • 240 mg given as two subcutaneous injections of 120 mg at a concentration of 40 mg/mL | • The first maintenance dose should be given 28 days after the starting dose.<br>• 80 mg given as one subcutaneous injection at a concentration of 20 mg/mL |

(Ex. F at § 2.1.)

53.    Section 2.2 of the FIRMAGON® package insert provides that FIRMAGON® is to be administered by a healthcare professional only:

| 2.2 | Reconstitution and Administration Instructions |
|---|---|

FIRMAGON is to be administered by a healthcare professional only.

(Ex. F at § 2.2.)

54.    The "Dosage Form and Strengths" section of the FIRMAGON® package insert provides:

---

**3    DOSAGE FORMS AND STRENGTHS**

For injection:
- FIRMAGON (240 mg): Two single-dose vials each delivering 120 mg of degarelix in a white to off-white lyophilized powder for reconstitution supplied with diluent in two prefilled syringes.
- FIRMAGON (80 mg): One single-dose vial delivering 80 mg of degarelix in a white to off-white lyophilized powder for reconstitution supplied with diluent in one prefilled syringe.

---

(Ex. F at § 3.)

55.    Section 5.3 of the FIRMAGON® package insert ("Laboratory Testing") states:

---

**5.3    Laboratory Testing**

FIRMAGON results in suppression of the pituitary gonadal system. Results of diagnostic tests of the pituitary gonadotropic and gonadal functions conducted during and after FIRMAGON may be affected. The therapeutic effect of FIRMAGON should be monitored by measuring serum concentrations of prostate-specific antigen (PSA) periodically. If PSA increases, serum concentrations of testosterone should be measured.

---

(Ex. F at § 5.3.)

56.    Section 6.3 of the FIRMAGON® package insert ("Postmarketing Experience")

states:

---

**6.3    Postmarketing Experience**

The following adverse reactions have been identified during post-approval use of FIRMAGON. Because these reactions are reported voluntarily from a population of uncertain size, it is not always possible to reliably estimate their frequency or establish a causal relationship to drug exposure.

*Changes in bone density*
Decreased bone density has been reported in the medical literature in men who have had orchiectomy or who have been treated with a GnRH agonist. It can be anticipated that long periods of medical castration in men will result in decreased bone density.

---

(Ex. F at § 6.3.)

57.    Section 14 of the FIRMAGON® package insert ("Clinical Studies") states:

## 14  CLINICAL STUDIES

The safety and efficacy of FIRMAGON were evaluated in an open-label, multi-center, randomized, parallel-group study (NCT00295750) in patients with prostate cancer.  A total of 620 patients were randomized to receive one of two FIRMAGON dosing regimens or leuprolide for one year:

    a.  FIRMAGON at a starting dose of 240 mg (40 mg/mL) followed by monthly doses of 80 mg (20 mg/mL) subcutaneously,

    b.  leuprolide 7.5 mg intramuscularly monthly.

    c.  FIRMAGON at a starting dose of 240 mg (40 mg/mL) followed by monthly doses of 160 mg (40 mg/mL) subcutaneously.

FIRMAGON is not approved for use with monthly doses of 160 mg (40 mg/mL) subcutaneously.

Serum levels of testosterone were measured at screening, on Day 0, 1, 3, 7, 14, and 28 in the first month, and then monthly until the end of the study.

The clinical trial population (n=610) across all treatment arms had an overall median age of approximately 73 (range 50 to 98).  The ethnic/racial distribution was 84% white, 6% black and 10% others.  Disease stage was distributed

approximately as follows:  20% metastatic, 29% locally advanced (T3/T4 Nx M0 or N1 M0), 31% localized (T1 or T2 N0 M0) and 20% classified as other (including patients whose disease metastatic status could not be determined definitively - or patients with PSA relapse after primary curative therapy).  In addition, the median testosterone baseline value across treatment arms was approximately 400 ng/dL.

The primary objective was to demonstrate that FIRMAGON is effective achieving and maintaining testosterone suppression to castration levels ($T \leq 50$ ng/dL) during 12 months of treatment.  The results are shown in Table 3.

### Table 3: Medical Castration Rates (Testosterone $\leq 50$ ng/dL) from Day 28 to Day 364

|  | FIRMAGON 240/80 mg N=207 | Leuprolide 7.5 mg N=201 |
|---|---|---|
| No. of Responders | 202 | 194 |
| Castration Rate (95% CIs)* | 97.2% (93.5; 98.8) | 96.4% (92.5; 98.2) |

\* Kaplan Meier estimates within group

Percentage changes in testosterone from baseline to Day 28 (median with interquartile ranges) are shown in Figure 2 and the percentages of patients who attained the medical castration of testosterone ≤ 50 ng/dL are summarized in Table 4.

**Figure 2: Percentage Change in Testosterone from Baseline by Treatment Group until Day 28 (Median with Interquartile Ranges)**



Table 4: Percentage of Patients Attaining Testosterone ≤ 50 ng/dL within the First 28 Days

|        | FIRMAGON 240/80 mg N=207 | Leuprolide 7.5 mg N=201 |
|--------|--------------------------|-------------------------|
| Day 1  | 52%                      | 0%                      |
| Day 3  | 96%                      | 0%                      |
| Day 7  | 99%                      | 1%                      |
| Day 14 | 99%                      | 18%                     |
| Day 28 | 100%                     | 100%                    |

In the clinical trial, PSA levels were monitored as a secondary endpoint. PSA levels were lowered by 64% two weeks after administration of FIRMAGON, 85% after one month, 95% after three months, and remained suppressed throughout the one year of treatment. These PSA results should be interpreted with caution because of the heterogeneity of the patient population studied. No evidence has shown that the rapidity of PSA decline is related to a clinical benefit.

(Ex. F at § 14.)

58. The package insert for Fresenius's ANDA Product will be substantially similar to the package insert for FIRMAGON® in all material respects.

59. Plaintiffs commenced this action within forty-five (45) days of receiving Fresenius's Notice Letter.

60.    There is an actual, real, immediate, and justiciable controversy between Plaintiffs and Defendants regarding whether Defendants will infringe the patents in suit.

## COUNT I

### Infringement of the '359 Patent

61.    Plaintiffs reallege paragraphs 1 to 60 and incorporate them by reference.

62.    Defendants' submission of ANDA No. 211999 to engage in the commercial manufacture, use, offer for sale, or sale within the United States or importation into the United States of Fresenius's ANDA Product before the expiration of the '359 patent constitutes infringement of one of more claims of the '359 patent under 35 U.S.C. § 271(e)(2)(A).

63.    Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA No. 211999, Defendants will infringe, either literally or under the doctrine of equivalents, one or more claims of the '359 patent by actively inducing infringement by others under 35 U.S.C. § 271(b).

64.    On information and belief, after the FDA has approved Fresenius's ANDA No. 211999, Defendants intend to manufacture, market, sell, and offer to sell Fresenius's ANDA Product with an FDA-approved product insert that will direct physicians and patients in the use of Fresenius's ANDA Product.

65.    On information and belief, Defendants will actively and intentionally aid, abet, encourage, participate, and induce others to perform acts that Defendants know will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '359 patent by marketing Fresenius's ANDA Product with the FDA-approved product insert.

66.    On information and belief, Defendants have knowledge of the '359 patent and know that the use of Fresenius's ANDA Product in accordance with the FDA-approved product

insert will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '359 patent.

67.    Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA No. 211999, Defendants will contributorily infringe one or more claims of the '359 patent under 35 U.S.C. § 271(c), by offering to sell and/or selling within the United States, and/or importing into the United States, Fresenius's ANDA Product.

68.    On information and belief, Defendants knew and know that Fresenius's ANDA Product is designed for a use that infringes one or more claims of the '359 patent, and Fresenius's ANDA Product lacks a substantial non-infringing use.

69.    Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court.

70.    Plaintiffs have no adequate remedy at law.

71.    This case is an exceptional one, and Plaintiffs are entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

## COUNT II

### Infringement of the '085 Patent

72.    Plaintiffs reallege paragraphs 1 to 60 and incorporate them by reference.

73.    Fresenius's submission of ANDA No. 211999 to engage in the commercial manufacture, use, offer for sale, or sale within the United States or importation into the United States of Fresenius's ANDA Product before the expiration of the '085 patent constitutes infringement of one of more claims of the '085 patent under 35 U.S.C. § 271(e)(2)(A).

74.    Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA No. 211999, Defendants will infringe, either literally or under the doctrine of equivalents, one or

more claims of the '085 patent by actively inducing infringement by others under 35 U.S.C. § 271(b).

75.     On information and belief, after the FDA has approved Fresenius's ANDA No. 211999, Defendants intend to manufacture, market, sell, and offer to sell Fresenius's ANDA Product with an FDA-approved product insert that will direct physicians and patients in the use of Fresenius's ANDA Product.

76.     On information and belief, Defendants will actively and intentionally aid, abet, encourage, participate, and induce others to perform acts that Fresenius knows will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '085 patent by marketing Fresenius's ANDA Product with the FDA-approved product insert.

77.     On information and belief, Defendants have knowledge of the '085 patent and knows that the use of Fresenius's ANDA Product in accordance with the FDA-approved product insert will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '085 patent.

78.     Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court.

79.     Plaintiffs have no adequate remedy at law.

80.     This case is an exceptional one, and Plaintiffs are entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

## COUNT III

### Infringement of the '081 Patent

81.     Plaintiffs reallege paragraphs 1 to 60 and incorporate them by reference.

82.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

83.     There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

84.     European Patent No. 2 650 012 ("the EP '012 patent") is a European counterpart to the '081 patent. On December 22, 2015, Fresenius Kabi Deutschland GmbH filed a Notice of Opposition to the EP '012 patent requesting that the European Patent Office ("EPO") revoke the EP '012 patent in its entirety. On information and belief, Fresenius Kabi Deutschland GmbH is wholly-owned by Fresenius AG.

85.     Defendants have made, and will continue to make, substantial preparation to manufacture, use, offer to sell, and/or sell within the United States, and/or to import into the United States, Fresenius's ANDA Product prior to the expiration of the '081 patent.

86.     Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA No. 211999, Defendants will infringe, either literally or under the doctrine of equivalents, one or more of claims of the '081 patent by actively inducing infringement by others under 35 U.S.C. § 271(b).

87.     On information and belief, after the FDA has approved Fresenius's ANDA No. 211999, Defendants intend to manufacture, market, sell, and offer to sell Fresenius's ANDA Product with an FDA-approved product insert that will direct physicians and patients in the use of Fresenius's ANDA Product.

88.     On information and belief, Defendants will actively and intentionally aid, abet, encourage, participate, and induce others to perform acts that Defendants know will directly

infringe, either literally or under the doctrine of equivalents, one or more claims of the '081 patent by marketing Fresenius's ANDA Product with the FDA-approved product insert.

89.    On information and belief, Defendants have knowledge of the '081 patent and knows that the use of Fresenius's ANDA Product in accordance with the FDA-approved product insert will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '081 patent.

90.    Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court.

91.    Plaintiffs have no adequate remedy at law.

92.    This case is an exceptional one, and Plaintiffs are entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

## COUNT IV

### Infringement of the '999 Patent

93.    Plaintiffs reallege paragraphs 1 to 60 and incorporate them by reference.

94.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

95.    There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

96.    The EP '012 patent is a European counterpart to the '999 patent. On December 22, 2015, Fresenius Kabi Deutschland GmbH filed a Notice of Opposition to the EP '012 patent requesting that the EPO revoke the EP '012 patent in its entirety. On information and belief, Fresenius Kabi Deutschland GmbH is wholly-owned by Fresenius AG.

97.     Defendants have made, and will continue to make, substantial preparation to manufacture, use, offer to sell, and/or sell within the United States, and/or to import into the United States, Fresenius's ANDA Product prior to the expiration of the '999 patent.

98.     Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA No. 211999, Defendants will infringe, either literally or under the doctrine of equivalents, one or more of claims of the '999 patent by actively inducing infringement by others under 35 U.S.C. § 271(b).

99.     On information and belief, after the FDA has approved Fresenius's ANDA No. 211999, Defendants intends to manufacture, market, sell, and offer to sell Fresenius's ANDA Product with an FDA-approved product insert that will direct physicians and patients in the use of Fresenius's ANDA Product.

100.    On information and belief, Defendants will actively and intentionally aid, abet, encourage, participate, and induce others to perform acts that Fresenius knows will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '999 patent by marketing Fresenius's ANDA Product with the FDA-approved product insert.

101.    On information and belief, Defendants have knowledge of the '999 patent and know that the use of Fresenius's ANDA Product in accordance with the FDA-approved product insert will directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '999 patent.

102.    Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court.

103.    Plaintiffs have no adequate remedy at law.

104.    This case is an exceptional one, and Plaintiffs are entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

## COUNT V

### Infringement of the '938 Patent

105.    Plaintiffs reallege paragraphs 1 to 60 and incorporate them by reference.

106.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

107.    There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

108.    European Patent No. 2421887 ("the EP '887 patent") is the European counterpart to the '938 patent.

109.    The '938 patent and the EP '887 patent both claim priority to Swedish Patent Application No. SE 0900558 ("the SE '558 application").

110.    Claim 1 of the EP '887 patent provides:

---

**Claims**

1.  A method of manufacture of degarelix, Ac-D-2Nal-D-Phe(4Cl)-D-3Pal-Ser-4Aph(Hor)-D-4Aph(Cbm)-Leu-ILys-Pro-D-Ala-NH$_2$, wherein degarelix comprises 0.3 % by weight or less, in particular 0.1 % by weight or less, most particularly 0.01 % by weight or less, of Ac-D-2Nal-D-Phe(4Cl)-D-3Pal-Ser-X-D-4Aph(Cbm)-Leu-ILys-Pro-D-Ala-NH$_2$, wherein X is 4-([2-(5-hydantoyl)]acetylamino)-phenylalanine, the method comprising step-wise synthesis on a solid support comprising an amino group linked to the support, wherein the steps comprise providing a solution of an amino acid or peptide of which the α-amino group is protected by Fmoc; contacting the support with the solution in the presence of reagent for forming a peptide bond between a carboxyl group of the dissolved amino acid or peptide and the amino group linked to the support for a time sufficient to form said peptide bond; removing Fmoc by contacting the support with an organic base selected from piperidine and C-alkyl substituted piperidine, in particular 2-alkylpiperidine, 3-alkylpiperidine, 2,4-dialkylpiperidine, 2,5-dialkyl-piperidine, 2,6-dialkylpiperidine, wherein alkyl is branched or straight chain from 1 to 6 carbon, in particular methyl or ethyl, most particularly methyl, in an organic solvent.

---

111.    Claim 1 of the EP '887 patent is similar to claim 1 of the '938 patent.

112.    On January 22, 2016, Fresenius Kabi Deutschland GmbH filed a Notice of Opposition to EP '887 requesting that the EPO revoke the EP '887 patent in its entirety. On June 30, 2017, the Opposition Division of the EPO denied the opposition. On September 8, 2017, Fresenius Kabi Deutschland GmbH filed a Notice of Appeal from that decision.

113.    On information and belief, Fresenius Kabi Deutschland GmbH is wholly-owned by Fresenius AG.

114.    Defendants have made, and will continue to make, substantial preparations to manufacture, use, offer to sell, and/or sell within the United States, and/or to import into the United States, Fresenius's ANDA Product prior to the expiration of the '938 patent.

115.    Unless enjoined by this Court, upon FDA approval of Fresenius's ANDA, Fresenius's importation into the United States, and/or use, offer to sell, and/or sale within the United States, of Fresenius's ANDA Product will constitute infringement, either literally or under the doctrine of equivalents, of one or more of claims of the '938 patent under 35 U.S.C. § 271(g).

116.    Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court.

117.    Plaintiffs have no adequate remedy at law.

118.    This case is an exceptional one, and Plaintiffs is entitled to an award of their reasonable attorneys' fees under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following judgment and relief:

a.    A declaration that the claims of United States Patent Number 9,579,359 are valid and enforceable;

b.      A declaration that Defendants' submission to the FDA of Fresenius's ANDA No.

211999 to obtain approval for the commercial manufacture, use, offer for sale, sale within, or

importation into, the United States of Fresenius's ANDA Product before the expiration of United

States Patent Number 9,579,359 was an act of infringement under 35 U.S.C. § 271(e)(2)(A);

c.      A declaration that Defendants' manufacture, use, offer to sell, sale within, and/or

importation into, the United States of Fresenius's ANDA Product prior to the expiration of

United States Patent Number 9,579,359 will infringe one or more claims of United States Patent

Number 9,579,359 under 35 U.S.C. § 271;

d.      An order that the effective date of the approval of Fresenius's ANDA No. 211999

be a date that is not earlier than the expiration of the term of United States Patent Number

9,579,359, including any extension(s) granted by the USPTO under 35 U.S.C. §§ 154 or 156, or

any later expiration of exclusivity to which Plaintiffs are or becomes entitled;

e.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283, enjoining

Defendants and all officers, agents, servants, employees, privies, and others acting for, or on

behalf of, or in concert with any of them, from infringing any claims of United States Patent

Number 9,579,359 prior to the expiration date of United States Patent Number 9,579,359 and

any additional dates of exclusivity;

f.      A permanent injunction enjoining Defendants and all officers, agents, servants,

employees, privies, and others acting for, or on behalf of, or in concert with any of them, from

seeking, obtaining, or maintaining approval of ANDA No. 211999 until the expiration date of

United States Patent Number 9,579,359 and any additional dates of exclusivity;

g.      A judgment granting Plaintiffs compensatory damages in an amount to be

determined at trial and including both pre-judgment and post-judgment interest, if Defendants

engage in the manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product before the expiration of United States Patent Number 9,579,359 and any additional dates of exclusivity;

h.    A declaration that the claims of United States Patent Number 9,415,085 are valid and enforceable;

i.    A declaration that Defendants' submission to the FDA of Fresenius's ANDA No. 211999 to obtain approval for the commercial use, offer for sale, sale within, or importation into, the United States of Fresenius's ANDA Product before the expiration of United States Patent Number 9,415,085 was an act of infringement under 35 U.S.C. § 271(e)(2)(A);

j.    A declaration that Defendants' manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product prior to the expiration of United States Patent Number 9,415,085 will infringe one or more claims of United States Patent Number 9,415,085 under 35 U.S.C. § 271;

k.    An order that the effective date of the approval of Fresenius's ANDA No. 211999 be a date that is not earlier than the expiration of the term of United States Patent Number 9,415,085, including any extension(s) granted by the USPTO under 35 U.S.C. §§ 154 or 156, or any later expiration of exclusivity to which Plaintiffs are or becomes entitled;

l.    A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283, enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from infringing any claims of United States Patent Number 9,415,085 prior to the expiration date of United States Patent Number 9,415,085 and any additional dates of exclusivity;

m.      A permanent injunction enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from seeking, obtaining, or maintaining approval of ANDA No. 211999 until the expiration date of United States Patent Number 9,415,085 and any additional dates of exclusivity;

n.      A judgment granting Plaintiffs compensatory damages in an amount to be determined at trial and including both pre-judgment and post-judgment interest, if Defendants engage in the manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product before the expiration of United States Patent Number 9,415,085 and any additional dates of exclusivity;

o.      A declaration that the claims of United States Patent Number 8,841,081 are valid and enforceable;

p.      A declaration that Defendants' manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product prior to the expiration of United States Patent Number 8,841,081 will infringe one or more claims of United States Patent Number 8,841,081 under 35 U.S.C. § 271;

q.      A permanent injunction under 35 U.S.C. § 283, enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from infringing any claims of United States Patent Number 8,841,081 prior to the expiration date of United States Patent Number 8,841,081 and any additional dates of exclusivity;

r.      A permanent injunction enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from

27

seeking, obtaining, or maintaining approval of ANDA No. 211999 until the expiration date of

United States Patent Number 8,841,081 and any additional dates of exclusivity;

     s.     A judgment granting Plaintiffs compensatory damages in an amount to be

determined at trial and including both pre-judgment and post-judgment interest, if Defendants

engages in the manufacture, use, offer to sell, sale within, and/or importation into, the United

States of Fresenius's ANDA Product before the expiration of United States Patent Number

8,841,081 and any additional dates of exclusivity;

     t.     A declaration that the claims of United States Patent Number 9,877,999 are valid

and enforceable;

     u.     A declaration that Defendants' manufacture, use, offer to sell, sale within, and/or

importation into, the United States of Fresenius's ANDA Product prior to the expiration of

United States Patent Number 9,877,999 will infringe one or more claims of United States Patent

Number 9,877,999 under 35 U.S.C. § 271;

     v.     A permanent injunction under 35 U.S.C. § 283, enjoining Defendants and all

officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert

with any of them, from infringing any claims of United States Patent Number 9,877,999 prior to

the expiration date of United States Patent Number 9,877,999 and any additional dates of

exclusivity;

     w.     A permanent injunction enjoining Defendants and all officers, agents, servants,

employees, privies, and others acting for, or on behalf of, or in concert with any of them, from

seeking, obtaining, or maintaining approval of ANDA No. 211999 until the expiration date of

United States Patent Number 9,877,999 and any additional dates of exclusivity;

x.      A judgment granting Plaintiffs compensatory damages in an amount to be determined at trial and including both pre-judgment and post-judgment interest, if Defendants engage in the manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product before the expiration of United States Patent Number 9,877,999 and any additional dates of exclusivity;

y.      A declaration that the claims of United States Patent Number 8,828,938 are valid and enforceable;

z.      A declaration that Defendants' manufacture, use, offer to sell, sale within, and/or importation into, the United States of Fresenius's ANDA Product prior to the expiration of United States Patent Number 8,828,938 will infringe one or more claims of United States Patent Number 8,828,938 under 35 U.S.C. § 271;

aa.     A permanent injunction under 35 U.S.C. § 283, enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from infringing any claims of United States Patent Number 8,828,938 prior to the expiration date of United States Patent Number 8,828,938 and any additional dates of exclusivity;

bb.     A permanent injunction enjoining Defendants and all officers, agents, servants, employees, privies, and others acting for, or on behalf of, or in concert with any of them, from seeking, obtaining, or maintaining approval of ANDA No. 211999 until the expiration date of United States Patent Number 8,828,938 and any additional dates of exclusivity;

cc.     A judgment granting Plaintiffs compensatory damages in an amount to be determined at trial and including both pre-judgment and post-judgment interest, if Defendants engage in the manufacture, use, offer to sell, sale within, and/or importation into, the United

States of Fresenius's ANDA Product before the expiration of United States Patent Number

8,828,938 and any additional dates of exclusivity;

      dd.    A judgment and order that this is an exceptional case under 35 U.S.C. § 285 and

awarding Plaintiffs their reasonable attorneys' fees, costs, and expenses; and

      ee.    Any and all other and further relief as this Court deems just and proper.

Dated: March 26, 2020

                                   */s/ Mary W. Bourke*
                                   Mary W. Bourke (#2356)
                                   Dana K. Severance (#4869)
                                   WOMBLE BOND DICKINSON (US) LLP
                                   1313 North Market Street, Suite 1200
                                   Wilmington, DE 19801
                                   Telephone: (302) 252-4320
                                   Mary.Bourke@wbd-us.com
                                   Dana.Severance@wbd-us.com

*Of Counsel:*

Joshua P. Davis
WOMBLE BOND DICKINSON (US), LLP
811 Main Street
Suite 3130
Houston, TX 77002
Telephone: (346) 998-7801
Joshua.P.Davis@wbd-us.com