**PROPOSED PRETRIAL ORDER**

**EXHIBIT 19-A**

**PLAINTIFFS' MOTION *IN LIMINE* NO. 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FERRING PHARMACEUTICALS INC., FERRING INTERNATIONAL CENTER, S.A., FERRING B.V., and POLYPEPTIDE LABORATORIES A/S | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 20-cv-431 (MN) |
| v. | ) ) | |
| FRESENIUS KABI USA, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' MOTION *IN LIMINE* NO. 3

Joshua P. Davis
811 Main Street
Suite 3130
Houston, TX 77002

Kenneth Mueller
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02110

*Of Counsel*

WOMBLE BOND DICKINSON (US) LLP
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
John B. Bourke (#6534)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320

*Counsel for Plaintiffs*

Dated: December 1, 2021

Plaintiffs respectfully move *in limine* to preclude Fresenius from arguing that the asserted claims of U.S. Patent No. 10,973,870 ("the '870 patent") are invalid as directed to patent ineligible subject matter under 35 U.S.C. § 101. This argument was in Fresenius's final invalidity contentions, but was not addressed by Fresenius's experts. Plaintiffs reasonably relied on the omission to conclude that Fresenius was no longer asserting Section 101 invalidity for the '870 patent, not least because Fresenius's expert did provide a Section 101 argumens for other asserted claims in other asserted patents. Plaintiffs will be substantially prejudiced if Fresenius is permitted to pursue such an argument at trial or in post-trial briefing.

## I.     Background

In its July 30, 2021 final invalidity contentions, Fresenius argued that the asserted claims of the '870 patent and the asserted claims of U.S. Patent Nos. 9,415,085 and 10,695,398 (the "CV patents") are invalid under Section 101. (Ex. 1 [Final Invalidity Contentions] at 191-194, 214-218, and 271-275.) During expert discovery, Fresenius's expert Dr. Yun maintained Fresenius's argument that the asserted claims of the CV patents are invalid under Section 101 (Ex. 2 [Yun Opening Report] at ¶¶ 678-682), but Dr. Yun did not opine that the asserted claims of the '870 patent are invalid under Section 101. This fact alone demonstrates that Fresenius made a strategic decision on which arguments to pursue and which arguments to drop.

After Fresenius failed to assert a Section 101 argument on the '870 patent at any stage of expert discovery, Fresenius has now attempted to revive the argument by including it in a November 15, 2021 draft of Exhibit 3 to the pretrial order submitted during the parties' pretrial exchanges. On November 19, 2021, the parties had a meet and confer to discuss, *inter alia*, this new argument. Counsel for Fresenius confirmed that Dr. Yun would not be providing opinions directed to whether the asserted claims of the '870 patent are invalid under Section 101. Instead, counsel suggested that expert testimony is unnecessary for a Section 101 argument and further

suggested that Fresenius could prove this argument through cross-examination of Plaintiffs' experts despite Fresenius bearing the burden of proof on these issues.

## II.    Argument

Preclusion for untimely disclosure is governed by the *Pennypack* factors: "(1) the prejudice or surprise in fact of the party against whom the [excluded evidence is offered], (2) the ability of that party to cure the prejudice, (3) the extent to which [the evidence or testimony] . . . would disrupt the orderly and efficient trial of the case . . . , and (4) bad faith or willfulness in failing to comply with the district court's order." *TrustID, Inc. v. Next Caller, Inc.*, C.A. No. 18-172-MN, 2021 WL 3015280, at \*3 (D. Del. July 6, 2021) (first alteration in original)). On balance, these factors favor preclusion.

First, Fresenius's attempt to revive its Section 101 argument on the '870 patent as part of the pretrial exchanges surprised Ferring. Fresenius bears the burden of proof on invalidity and, when Fresenius's expert Dr. Yun provided a Section 101 argument on the CV patent but not on the '870 patent, Plaintiffs reasonably assumed Fresenius was no longer asserting a Section 101 argument on the '870 patent. Plaintiffs' experts were never afforded an opportunity to provide opinions directed to this issue because Fresenius chose not to have its expert opine on this issue. Instead, Plaintiffs' experts provided opinions on the litany of other invalidity challenges that Fresenius *did* choose to argue in its expert reports. Permitting Fresenius to argue that the asserted claims of the '870 patent are invalid under Section 101 without Plaintiffs' experts having the opportunity to provide opinions on this issue would be prejudicial to Plaintiffs.

Second, there is no reasonable way to cure this prejudice without disrupting trial. Expert discovery is now closed and trial is set to begin on January 18, 2022. Moreover, because Fresenius did not have Dr. Yun opine on this issue (and suggested that Fresenius may try to prove this issue through cross-examination of Plaintiffs' expert witnesses), Plaintiffs are at the

distinct disadvantage of not knowing exactly what Fresenius may argue in post-trial briefing on this issue and whether Plaintiffs have put in sufficient factual evidence at trial to address Fresenius's arguments, which are still unknown and undisclosed to Plaintiffs.

Lastly, it strains credulity to believe that, despite Dr. Yun opining on a Section 101 argument on the CV patents, Fresenius intended to maintain its Section 101 argument on the '870 patent while not having Dr. Yun opine on this issue. While the subject matter claimed in the CV patents is distinct from the subject matter claimed in the '870 patent, Fresenius's Section 101 arguments are similar between the patents. For example, in its final invalidity contentions, Fresenius argued:

> With respect to the claims of the '398 patent, although it takes "human action," *i.e.*, administering degarelix to a subject with a history of one or more of the claimed CV events, the relationship itself, *i.e.*, the correlation between the history of at least one particular CV event and the risk of an additional CV event, is an entirely natural law that exists apart from any human action.
> . . .
>
> With respect to the claims of the '870 patent, although it takes "human action," *i.e.*, administering degarelix to a subject, the relationship itself, *i.e.*, the correlation between the likelihood of developing a musculoskeletal disorder or a connective tissue disorder with degarelix treatment compared to GnRH agonist/leuprolide treatment, is an entirely natural law that exists apart from any human action.

(Ex. 1 at 215-216, 273.) Dr. Yun provided opinions on the CV patents consistent with Fresenius's contentions but did not do so for the '870 patent. (Ex. 2 at ¶¶ 678-682.) Thus, it seems that Fresenius affirmatively chose not to assert a Section 101 argument on the '870 patent and now is wanting to revive that argument under the pretense that expert testimony is not needed to prove a Section 101 argument. Fresenius should not be rewarded for shifting positions.

Accordingly, Fresenius should be precluded from arguing that the asserted claims of the '870 patent are invalid as directed to patent ineligible subject matter under Section 101.

Dated: December 1, 2021

OF COUNSEL:

Joshua P. Davis
811 Main Street
Suite 3130
Houston, TX 77002

Kenneth Mueller
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02110

Respectfully submitted,

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Ben.Bourke@wbd-us.com

*Counsel for Plaintiffs*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FERRING PHARMACEUTICALS INC.,　　　)
FERRING INTERNATIONAL CENTER S.A.,　)
FERRING B.V., and　　　　　　　　　　)
POLYPEPTIDE LABORATORIES A/S　　　　)
　　　　　　　　　　　　　　　　　　)　C.A. No. 20-431 (MN)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
FRESENIUS KABI USA, LLC,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

**<u>FRESENIUS KABI'S FINAL INVALIDITY CONTENTIONS</u>**

*Dr. Reddy's Labs., Inc.*, --- F. App'x ---, 2021 WL 48428, * (Fed. Cir. Jan. 6, 2021)**Error! Bookmark not defined.** (affirming finding of indefiniteness where the proper reading of the claim rendered it nonsensical).

The term is also ambiguous as to a time point for comparison. The study referenced in the specification refers only to a reduction after one full year of treatment. '085 pat., 50:38-56. But the claim is much broader—it is open ended and is not limited to a comparison at any time point after treatment. Open-ended claims are likely to be invalid precisely because they leave ambiguity about how a POSA should make the claimed comparison. *See, e.g.*, *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1383-84 (Fed. Cir. 2012) (finding open-ended claim invalid).

### D. Claim 2 of the '085 Patent Is Invalid as Directed to a Patent Ineligible Concept Under 35 U.S.C. § 101

The determination of patent ineligibility under 35 U.S.C. § 101 involves ascertaining (1) whether the claims are directed to a patent ineligible concept (*e.g.*, a law of nature, natural phenomena or abstract idea), and if so, (2) whether other limitations of the claim provide an inventive concept sufficient to transform the claim into a patent-eligible application of the ineligible concept. *Alice Corp. v. CLS Bank Int'l.*, 573 U.S. 208, 217 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012).

For the reasons discussed below, claim 2 of the '085 patent is invalid under 35 U.S.C. § 101.

### 1. The Claims are Directed to a Natural Law

Claim 2 of the '085 patent is directed to a patent ineligible concept, namely, a natural law. Independent claim 1 (from which claim 2 depends) is directed to "a method of treating prostate cancer in a subject," by selecting a subject "with a history of at least one [particular] cardiovascular

event and prostate cancer," comprising (1) administering degarelix to the subject, and (2) wherein the administration of degarelix decreases the frequency of an additional CV event in the subject as compared to the frequency of an additional CV event in a subject with a history of at least one CV event who is treated with a GnRH agonist. Thus, the claims of the '085 patent set forth a method of treatment based upon the alleged relationship between the history of at least one particular CV event and the occurrence of an additional CV event in patients with prostate cancer.

The Supreme Court's reasoning in *Mayo* is instructive here. The claim at issue in *Mayo* provided as follows:

> A method of optimizing therapeutic efficacy for treatment of an immune-mediated gastrointestinal disorder, comprising:
>
> (a) administering a drug providing 6-thioguanine to a subject having said immune-mediated gastrointestinal disorder; and
>
> (b) determining the level of 6-thioguanine in said subject having said immune-mediated gastrointestinal disorder,
>
> wherein the level of 6-thioguanine less than about 230 pmol per $8\times10^8$ red blood cells indicates a need to increase the amount of said drug subsequently administered to said subject and
>
> wherein the level of 6-thioguanine greater than about 400 pmol per $8\times10^8$ red blood cells indicates a need to decrease the amount of said drug subsequently administered to said subject.

*Mayo*, 566 U.S. at 74–75.

As explained by the Supreme Court, the claim at issue in *Mayo* was directed to the "relationships between concentrations of certain metabolites in the blood and the likelihood that a dose of a thiopurine drug will prove ineffective or cause harm," which sets forth a "law of nature." 566 U.S. at 77. The court reasoned that "[w]hile it takes a human action (the administration of a thiopurine drug) to trigger a manifestation of this relation in a particular person, the relation itself exists in principle apart from any human action." *Id*. Thus, "[t]he relation is a consequence of the

ways in which thiopurine compounds are metabolized by the body—entirely natural processes." *Id*.

With respect to the claims of the '085 patent, although it takes "human action," *i.e.*, administering degarelix to a subject with a history of one or more of the claimed CV events, the relationship itself, *i.e.*, the correlation between the history of at least one particular CV event and the frequency of the occurrence of an additional CV event, is an entirely natural law that exists apart from any human action. The natural correlation between the history of a particular CV event and the predicted medical outcome is a law of nature and is presumed to be patent ineligible. *See Mayo*, 566 U.S. at 77. The claims of the '085 patent do not set forth any "novel method of treating a disease," but instead simply recite the underlying biological relationship between a history of CV events and subsequent CV events, *i.e.*, a law of nature. *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1121, 1134–1136 (Fed. Cir. 2018), *cert. denied sub nom. Hikma Pharm. USA Inc. v. Vanda Pharm. Inc.*, 140 S. Ct. 911 (2020).

The claims of the '085 patent are directed to a law of nature under step one of the *Mayo* and *Alice* test. *See Vanda*, 887 F.3d at 1135.

### 2. The Claims Do Not Contain Sufficient Additional Elements to Transform the Claims into a Patent-Eligible Application of a Natural Law

For the reasons discussed above, claim 2 of the '085 patent is directed to a patent ineligible concept, namely, a natural law. The additional elements of each claim must next be considered individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim into a patent-eligible application" of the natural law. *See Alice*, 573 U.S. at 217–218 (internal citations and quotation marks omitted). In other words, in order to be patent eligible, the claims must contain an element or combination of elements sufficient to "transform" the claims, such that, in practice, they amount to significantly more than the natural

law itself. *See id.* (internal citations and quotation marks omitted). The limitations of claim 2 of the '085 patent is discussed in detail below.

Claim 2 recites "well understood, routine, and conventional" subject matter. *See Mayo*, 566 U.S. at 78. Claim 1 recites a method of treating prostate cancer by selecting a subject with a history of at least one particular CV event, and administering degarelix to that subject. However, it was well known to treat subjects with a history of at least one of the claimed CV events, *i.e.*, ischemic heart disease, with degarelix (*see* Smith 2010, Table 1). Claim 2 specifies a particular initial dose and maintenance dose of degarelix, given at certain points in time, all of which were well known and standard in view of the prior art (*see, e.g.*, Smith 2010, page 2314).

For at least the reasons discussed above, none of the additional elements recited in the claims of the '085 patent individually amount to something "significantly more" than the patent ineligible natural law itself. *See, e.g., Alice*, 573 U.S. at 218. Considering these elements as an "ordered combination" does not change the result, as the "combination adds nothing to the laws of nature that is not already present when the steps are considered separately." *See Mayo,* 566 U.S. at 79. The Supreme Court's reasoning in *Mayo* is applicable here:

> [T]he claims inform a relevant audience about certain laws of nature; any additional steps consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately. For these reasons we believe that the steps are not sufficient to transform unpatentable natural correlations into patentable applications of those regularities.

*Mayo*, 566 U.S. at 79–80.

As a result, claim 2 of the '085 patent is invalid under 35 U.S.C. § 101 as directed to patent ineligible subject matter.

**H.      Claims 2 and 8 of the '398 Patent are Invalid as Directed to a Patent Ineligible Concept Under 35 U.S.C. § 101**

The determination of patent ineligibility under 35 U.S.C. § 101 involves ascertaining (1) whether the claims are directed to a patent ineligible concept (*e.g.*, a law of nature, natural phenomena or abstract idea), and if so, (2) whether other limitations of the claim provide an inventive concept sufficient to transform the claim into a patent-eligible application of the ineligible concept. *Alice Corp. v. CLS Bank Int'l.*, 573 U.S. 208, 217 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012).

For the reasons discussed below, claims 2 and 8 of the '398 patent are invalid under 35 U.S.C. § 101.

**1.      The Claims are Directed to a Natural Law**

The claims of the '398 patent are directed to a patent ineligible concept, namely, a natural law. Independent claim 1 (from which claims 2 and 8 of the '398 patent depend) is directed to "a method for treating a subject that has prostate cancer," by selecting a subject "that has a history of at least one [particular] cardiovascular event," comprising (1) administering degarelix to the subject, and (2) wherein a risk of developing or experiencing an additional cardiovascular event upon treatment with degarelix is diminished compared to a risk of developing or experiencing an additional cardiovascular event upon treatment with a GnRH agonist. Thus, the claims of the '398 patent set forth a method of treatment based upon the alleged relationship between the history of

at least one particular CV event and the risk of an additional CV event in patients with prostate cancer.

The Supreme Court's reasoning in *Mayo* is instructive here. The claim at issue in *Mayo* provided as follows:

> A method of optimizing therapeutic efficacy for treatment of an immune-mediated gastrointestinal disorder, comprising:
>
> (a) administering a drug providing 6-thioguanine to a subject having said immune-mediated gastrointestinal disorder; and
>
> (b) determining the level of 6-thioguanine in said subject having said immune-mediated gastrointestinal disorder,
>
> wherein the level of 6-thioguanine less than about 230 pmol per $8x10^8$ red blood cells indicates a need to increase the amount of said drug subsequently administered to said subject and
>
> wherein the level of 6-thioguanine greater than about 400 pmol per $8x10^8$ red blood cells indicates a need to decrease the amount of said drug subsequently administered to said subject.

*Mayo*, 566 U.S. at 74–75.

As explained by the Supreme Court, the claim at issue in *Mayo* was directed to the "relationships between concentrations of certain metabolites in the blood and the likelihood that a dose of a thiopurine drug will prove ineffective or cause harm," which sets forth a "law of nature." 566 U.S. at 77. The court reasoned that "[w]hile it takes a human action (the administration of a thiopurine drug) to trigger a manifestation of this relation in a particular person, the relation itself exists in principle apart from any human action." *Id*. Thus, "[t]he relation is a consequence of the ways in which thiopurine compounds are metabolized by the body—entirely natural processes." *Id*.

With respect to the claims of the '398 patent, although it takes "human action," *i.e.*, administering degarelix to a subject with a history of one or more of the claimed CV events, the relationship itself, *i.e.*, the correlation between the history of at least one particular CV event and

the risk of an additional CV event, is an entirely natural law that exists apart from any human action. The natural correlation between the history of a particular CV event and the predicted medical outcome is a law of nature and is presumed to be patent ineligible. *See Mayo*, 566 U.S. at 77. The claims of the '398 patent do not set forth any "novel method of treating a disease," but instead simply recite the underlying biological relationship between a history of CV events and subsequent CV events, *i.e.*, a law of nature. *Vanda,* 887 F.3d at 1121, 1134–1136.

The claims of the '398 patent are directed to a law of nature under step one of the *Mayo* and *Alice* test. *See Vanda*, 887 F.3d at 1135.

  **2.**  **The Claims Do Not Contain Sufficient Additional Elements to Transform the Claims into a Patent-Eligible Application of a Natural Law**

For the reasons discussed above, all claims of the '398 patent are directed to a patent ineligible concept, namely, a natural law. The additional elements of each claim must next be considered individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim into a patent-eligible application" of the natural law. *See Alice*, 573 U.S. at 217–218 (internal citations and quotation marks omitted). In other words, in order to be patent eligible, the claims must contain an element or combination of elements sufficient to "transform" the claims, such that, in practice, they amount to significantly more than the natural law itself. *See id*. (internal citations and quotation marks omitted). Each of the limitations of the claims of the '398 patent is discussed in detail below.

Claims 2 and 8 recite "well understood, routine, and conventional" subject matter. *See Mayo*, 566 U.S. at 78. Claim 1 recites a method of treating a subject that has prostate cancer by selecting a subject with a history of at least one particular CV event, and administering degarelix to that subject. However, it was well known to treat subjects with a history of at least one of the claimed CV events, *i.e.*, ischemic heart disease, with degarelix (*see* Smith 2010, Table 1). Claim

2 specifies particular initial doses and maintenance doses of degarelix, given at certain points in time, all of which were well known and standard in view of the prior art (*see, e.g.*, Smith 2010, page 2314). Claim 8 specifies that the subject being treated has a particular prostate cancer disease state (claim 8), which was present in the subjects treated according to the claimed degarelix dosing schedule described by Smith 2010.

For at least the reasons discussed above, none of the additional elements recited in the claims of the '398 patent individually amount to something "significantly more" than the patent ineligible natural law itself. *See, e.g., Alice*, 573 U.S. at 218. Considering these elements as an "ordered combination" does not change the result, as the "combination adds nothing to the laws of nature that is not already present when the steps are considered separately." *See Mayo*, 566 U.S. at 79. The Supreme Court's reasoning in *Mayo* is applicable here:

> [T]he claims inform a relevant audience about certain laws of nature; any additional steps consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately. For these reasons we believe that the steps are not sufficient to transform unpatentable natural correlations into patentable applications of those regularities.

*Mayo*, 566 U.S. at 79–80. As a result, claims 2 and 8 of the '398 patent are invalid under 35 U.S.C. § 101 as directed to patent ineligible subject matter.

During prosecution of the '108 application that issued as the '398 patent, Applicants overcame a rejection under 35 U.S.C. § 101, which was directed to different claims and based upon different reasoning. In particular, the Patent Office rejected the then-pending claims under 35 U.S.C. § 101 as directed to the "abstract idea of determining whether the subject has a history of at least one cardiovascular event," and because they "encompasse[d] doing nothing or not administering degarelix for the scope of subjects that were not determined to have at least one

cardiovascular event" (Office Action dated August 12, 2019, page 5). At the time of the Patent Office's rejection, pending claim 1 was directed to a method for treating a subject that has prostate cancer comprising, among other things, determining whether the subject has a history of at least one CV event and administering the degarelix to the subject if they subject has a history of at least one CV event. The rejection issued by the Patent Office, and overcome by Applicants, is distinct from, and does not change, the fact that the claims of the '398 patent are directed to a law of nature are invalid under 35 U.S.C. § 101.

### I.     Claims 3 and 13 of the '359 Patent are Invalid as Obvious Under 35 U.S.C. § 103

#### 1.     Scope and Content of the Prior Art

Doehn published in 2006, *i.e.*, more than one year prior to the earliest possible effective filing date of February 11, 2008 for the '359 patent. Doehn, therefore, is prior art to the '359 patent under 35 U.S.C. § 102(b). Doehn was cited by Applicants in an IDS but was not relied upon by the Examiner in any rejection during prosecution of the '359 patent.

The WO '049 publication published on January 23, 2003, *i.e.*, more than one year prior to the earliest possible effective filing date of February 11, 2008 for the '359 patent. The WO '049 publication, therefore, is prior art to the '359 patent under 35 U.S.C. § 102(b). The WO '049 publication was cited by Applicants in an IDS but was not relied upon by the Examiner in any rejection during prosecution.

Tammela published in 2005, *i.e.*, more than one year prior to the earliest possible effective filing date of February 11, 2008 for the '359 patent. Tammela, therefore, is prior art to the '359 patent under 35 U.S.C. § 102(b). Tammela was cited by Applicants in an IDS but was not relied upon by the Examiner in any rejection during prosecution.

population data to make informed decisions, the patentee chose to claim not comparisons between population sets, but rather to a decreased likelihood of developing certain side effects for an individual subject patient. Given the specific claim language, how to determine what is covered by the claim remains unanswered in the specification. The claims are directed to reducing the likelihood of side effects in a particular patient. There is no way for a physician understand how "to decrease the likelihood of developing" any specific adverse event in "a subject," as required by the claims. The words of a claim control and cannot be rewritten through the claim construction process. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

Similarly, the POSA cannot determine whether any lack of these side effects was the result of the administration of degarelix or due to the fact that a particular subject simply did not experience these side effects. Because the physician cannot determine whether for any particular patient there was any decrease in the likelihood of developing these side effects, the claims are indefinite.

Finally, the claims do not require any additional steps to reduce these side effects other than administering degarelix. In other words, the limitation to "decrease the likelihood of developing a musculoskeletal disorder or a connective tissue disorder" must be automatically met by virtue of administering degarelix. To the extent the claimed decrease in the likelihood of developing these side effects relies on something more than the administration of degarelix alone, that other step is not taught or described in the specification or required by the claims. As such, the scope of the claim cannot be determined by a POSA.

### O.   All Asserted Claims of the '870 Patent are Invalid as Directed to a Patent Ineligible Concept Under 35 U.S.C. § 101

The determination of patent ineligibility under 35 U.S.C. § 101 involves ascertaining (1) whether the claims are directed to a patent ineligible concept (*e.g.*, a law of nature, natural

phenomena or abstract idea), and if so, (2) whether other limitations of the claim provide an inventive concept sufficient to transform the claim into a patent-eligible application of the ineligible concept. *Alice Corp. v. CLS Bank Int'l.*, 573 U.S. 208, 217 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012).

For the reasons discussed below, claims 3, 5, 6, 8, and 14 of the '870 patent are invalid under 35 U.S.C. § 101.

### 1.    The Claims are Directed to a Natural Law

The claims of the '870 patent are directed to a patent ineligible concept, namely, a natural law. Independent claims 1 (from which all dependent claims of the '870 patent depend) is directed to methods "for treating a subject that has prostate cancer," by "choosing a dosing regimen of degarelix over gonadotrophin releasing hormone (GnRH) agonist treatment to decrease the likelihood of developing a musculoskeletal disorder or a connective tissue disorder compared to [GnRH agonist]/[leuprolide] treatment when treating prostate cancer in the subject." Thus, the claims of the '870 patent set forth a method of treatment based upon the mental step of choosing a dosing regimen of degarelix based on the intention to achieve the natural result of the subject having a lower likelihood of developing a musculoskeletal disorder or a connective tissue disorder compared to GnRH agonist/leuprolide treatment.

The Supreme Court's reasoning in *Mayo* is instructive here. The claim at issue in *Mayo* provided as follows:

> A method of optimizing therapeutic efficacy for treatment of an immune-mediated gastrointestinal disorder, comprising:
>
> (a) administering a drug providing 6-thioguanine to a subject having said immune-mediated gastrointestinal disorder; and
>
> (b) determining the level of 6-thioguanine in said subject having said immune-mediated gastrointestinal disorder,

> wherein the level of 6-thioguanine less than about 230 pmol per $8x10^8$ red blood cells indicates a need to increase the amount of said drug subsequently administered to said subject and
>
> wherein the level of 6-thioguanine greater than about 400 pmol per $8x10^8$ red blood cells indicates a need to decrease the amount of said drug subsequently administered to said subject.

*Mayo*, 566 U.S. at 74–75.

As explained by the Supreme Court, the claim at issue in *Mayo* was directed to the "relationships between concentrations of certain metabolites in the blood and the likelihood that a dose of a thiopurine drug will prove ineffective or cause harm," which sets forth a "law of nature." 566 U.S. at 77. The court reasoned that "[w]hile it takes a human action (the administration of a thiopurine drug) to trigger a manifestation of this relation in a particular person, the relation itself exists in principle apart from any human action." *Id*. Thus, "[t]he relation is a consequence of the ways in which thiopurine compounds are metabolized by the body—entirely natural processes." *Id*.

With respect to the claims of the '870 patent, although it takes "human action," *i.e.*, administering degarelix to a subject, the relationship itself, *i.e.*, the correlation between the likelihood of developing a musculoskeletal disorder or a connective tissue disorder with degalrelix treatment compared to GnRH agonist/leuprolide treatment, is an entirely natural law that exists apart from any human action. The natural correlation between likelihood of developing a musculoskeletal disorder or a connective tissue disorder and the predicted medical outcome is a law of nature and is presumed to be patent ineligible. *See Mayo*, 566 U.S. at 77. The claims of the '870 patent do not set forth any "novel method of treating a disease," but instead simply recite the underlying biological relationship between a history of CV events and subsequent CV events, *i.e.*, a law of nature. *Vanda*, 887 F.3d at 1121, 1134–1136.

The claims of the '870 patent are directed to a law of nature under step one of the *Mayo* and *Alice* test. *See Vanda*, 887 F.3d at 1135.

### 2. The Claims Do Not Contain Sufficient Additional Elements to Transform the Claims into a Patent-Eligible Application of a Natural Law

For the reasons discussed above, all claims of the '870 patent are directed to a patent ineligible concept, namely, a natural law. The additional elements of each claim must next be considered individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim into a patent-eligible application" of the natural law. *See Alice*, 573 U.S. at 217–218 (internal citations and quotation marks omitted). In other words, in order to be patent eligible, the claims must contain an element or combination of elements sufficient to "transform" the claims, such that, in practice, they amount to significantly more than the natural law itself. *See id.* (internal citations and quotation marks omitted). Each of the limitations of the claims of the '870 patent is discussed in detail below.

Claims 3, 5, 6, 8, and 14 recite "well understood, routine, and conventional" subject matter. *See Mayo*, 566 U.S. at 78. Claim 1 recites a method of treating a subject that has prostate cancer by choosing a dosing regimen of degarelix and then administering degarelix according to that regimen. The dependent claims narrow the specific concentrations, doing amounts, and dosing times for the regimen (claims 5, 6, 8, and 14), or further specify which musculoskeletal disorder or a connective tissue disorder have a lower likelihood (claim 3). For at least the reasons discussed above, none of the additional elements recited in the claims of the '870 patent individually amount to something "significantly more" than the patent ineligible natural law itself. *See, e.g., Alice*, 573 U.S. at 218. Considering these elements as an "ordered combination" does not change the result, as the "combination adds nothing to the laws of nature that is not already present when the steps

are considered separately." *See Mayo,* 566 U.S. at 79. The Supreme Court's reasoning in *Mayo* is applicable here:

> [T]he claims inform a relevant audience about certain laws of nature; any additional steps consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately. For these reasons we believe that the steps are not sufficient to transform unpatentable natural correlations into patentable applications of those regularities.

*Mayo,* 566 U.S. at 79–80. As a result, claims 3, 5, 6, 8, and 14 of the '870 patent are invalid under 35 U.S.C. § 101 as directed to patent ineligible subject matter.

During prosecution of the '179 application that issued as the '870 patent, Applicants filed a Request for Continued Examination, and explained in an interview summary that the examiner had promised to consult with a § 101 specialist to ensure the claims were directed to patent eligible subject matter. However, the examiner allowed the pending claims without any commentary or reason for allowance. In fact, the examiner never affirmatively addressed the patent eligibility of these claims. Thus, there is nothing substantive in the prosecution history addressing the patent ineligibility of these claims.

### P.   Claims 2-10 and 15-18 of the '081 Patent Are Invalid as Obvious Under 35 U.S.C. § 103

The asserted claims of the '081 patent would have been obvious to a person of ordinary skill in the art. A determination of obviousness under 35 U.S.C. § 103 involves ascertaining (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) objective evidence of nonobviousness.

#### 1.   The Scope and Content of the Prior Art

Holdaway published in 1988, *i.e.,* more than one year prior to the earliest possible effective filing date for the '081 patent. Holdaway, therefore, is prior art to the '081 patent under 35 U.S.C.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FERRING PHARMACEUTICALS INC.,  )
FERRING INTERNATIONAL CENTER S.A.,  )
FERRING B.V., and  )
POLYPEPTIDE LABORATORIES A/S  )
                                 )   C.A. No. 20-431 (MN)
        Plaintiffs,  )
                                   )
        v.  )   CONTAINS CONFIDENTIAL
                                   )   INFORMATION – SUBJECT TO
FRESENIUS KABI USA, LLC  )   PROTECTIVE ORDER
                                   )
        Defendant.  )


**OPENING EXPERT REPORT OF EDWARD J. YUN, M.D.**

676.    Plaintiffs argued during the prosecution of the '085 and '398 patents that the administration of degarelix to a group of prostate cancer patients, without filtering for preexisting CV events before administration of degarelix, does not satisfy the "selecting" limitation. during prosecution of the '330 application that led to the '085 patent, Applicants argued:

> While Smith 2010 administers degarelix to some patients with a history of cardiovascular event[s], this does not in any manner disclose or suggest the claimed dual selection step because Smith 2010 does not select a prostate cancer patient with a history of at least one cardiovascular event. Rather, it administers degarelix to all patients regardless of their cardiovascular history.

(Response to Office Action dated November 30, 2015, pages 10–11). The specification does not teach what additional steps are required to "select" patients.

677.    The shared specification of the '085 and '398 patents provides the same data presented in the Smith 2010 reference. So to the extent that reference is insufficient to anticipate the "selecting" claim limitation, this claim limitation lacks a written description in the '085 and '398 patents.

### E.    The Asserted Claims of the Cardiovascular Event Patents Are Invalid Because They Are Directed to Patent Ineligible Subject Matter

678.    As described above, I understand that one cannot obtain a patent on a law of nature. In my opinion, claim 2 of the '085 patent and claims 2 and 8 of the '398 patent are directed to a law of nature representing the relationship between cardiovascular events and treatment of prostate cancer with GnRH agonists.

679.    The independent claims from which the asserted claims depend all require the steps of (1) selecting a subject with a history of at least one CV event; (2) administering degarelix; and therefore (3) reducing the frequency or risk of additional CV events as compared to treatment with a GnRH agonist. The claims are directed to the reducing the risk or frequency of CV events in prostate cancer subjects not based on anything specific done during treatment,

165

but based on the natural law related to the link between GnRH agonist therapy and cardiovascular events.

680.    The alleged discovery of the Cardiovascular Event Patents, and identified in the unexpected result evidence, is not that treatment with degarelix affirmatively prevents cardiovascular events, but the discovery that there is a biological link between GnRH agonist treatment and cardiovascular events due to some interaction between GnRH agonists and underlying cardiovascular risk factors. This correlation between GnRH agonist therapy and CV events is a law of nature and not even tied to degarelix.

681.    I understand that a claim to a law of nature may be transformed into patent eligible subject matter if there are additional elements in the claim that make it more than a claim to the natural law. In my opinion the claims do not contain such additional elements.

682.    Except for the cardiovascular relationship, all other elements of the asserted claims of the Cardiovascular Event Patents recite the administration of an FDA approved drug, degarelix, according to the FDA approved doses and dosing regimen. In fact, because the incidence of CV events is tied to administration of a GnRH agonist, treatment with any other class of drug, or even a placebo, would result in the same reduction of CV events. In other words, the additional elements of the claim are either routine subject matter, or irrelevant to the natural law embodied in the claims.

## XII.    SERUM ALKALINE PHOSPHATASE LEVEL PATENTS

683.    Plaintiffs have asserted that Fresenius Kabi's ANDA product will infringe claims of the '081 patent and the '999 patent. These two patents are related, which I understand to mean that they descend from the same original patent application. I understand that these two patents share a common specification and the same effective filing date of April 11, 2008.

166

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 19-B**

<u>**OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FERRING PHARMACEUTICALS INC.,
FERRING INTERNATIONAL CENTER S.A.,
FERRING B.V., and
POLYPEPTIDE LABORATORIES A/S

        Plaintiffs,

        v.

FRESENIUS KABI USA, LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 20-431 (MN)

## <u>DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3</u>

Defendant disagrees with Plaintiffs' Motion in Limine No. 3. Defendant asks the Court to deny the Motion in its entirety. Defendant's argument that the asserted claims of U.S. Patent No. 10,973,870 ("the '870 patent") are invalid under 35 U.S.C. § 101 as directed to patent ineligible subject matter was not untimely disclosed in the Pre-Trial Order, and Plaintiffs are not prejudiced by the argument's inclusion.

Plaintiffs seek to preclude Defendant from arguing that the asserted claims of the '870 patent are invalid under 35 U.S.C. § 101 because the argument was untimely disclosed. They characterize Defendant's inclusion of its Section 101 argument as an "attempt[] to revive" it. (Pls.' Mot. in Limine No. 3, at 1.) However, Plaintiffs' argument fails. The Section 101 argument for the '870 patent was disclosed in Defendant's invalidity contentions, well before the Pre-Trial Order was drafted. It was never waived or dropped, so there is no need to attempt to revive it. It was properly included in the Pre-Trial Order. Further, Plaintiff's reliance on the *Pennypack* factors is misplaced.

Plaintiffs argue that the Third Circuit's *Pennypack* factors favor preclusion of the Section 101 argument for the asserted claims of the '870 patent. (Pls.' Mot. in Limine No. 3 at 2.)

1

However, cases that apply the *Pennypack* factors almost exclusively relate to infringement or invalidity theories that were not raised in the contentions. *See ViaTech Techs., Inc. v. Microsoft Corp.*, No. CV 17-570-RGA, 2021 WL 663057, at *2 (D. Del. Feb. 19, 2021) (granting motion to strike Doctrine of Equivalents theories raised for the first time in expert's report, after the close of fact discovery); *Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, No. CV 16-139-WCB, 2018 WL 2225113, at *4-7 (D. Del. May 15, 2018) (granting motion to strike plaintiff's infringement theory, which was stated for the first time in a brief in support of plaintiff's motion for summary judgment, and prevent plaintiff from using theory at trial).

Here, the Court is presented with an entirely different situation. The Section 101 argument was first made in Defendant's invalidity contentions. Pls' MIL Ex. 1 (Def's Contentions) at 271-75.) The fact that the argument was not addressed by Defendant's experts is irrelevant in a motion for untimely disclosure because the Section 101 argument was timely raised in Defendant's contentions. Whether a patent contains ineligible subject matter is a question of law for the Court to decide, so an expert opinion is not required in all situations.

When an argument is included in a party's contentions, there is no prejudice to the other party if that argument is not included in an expert's report. *HSM Portfolio LLC v. Elpida Memory Inc.*, No. CV 11-770-RGA, 2016 WL 552543, at *3 (D. Del. Feb. 11, 2016) (denying a motion to strike a Doctrine of Equivalents theory from use at trial because it was disclosed in the party's contentions). The lack of prejudice to the party attempting to exclude an argument in a party's contentions is bolstered if the argument is nearly identical to another in an expert's report. *Id.* Arguments in a party's contentions are not new theories. *Id.*

Plaintiffs admit that the Section 101 argument was in Defendant's contentions. (Pls.' Mot. in Limine No. 3 at 1, Ex. 1 at 271-275.) Plaintiffs admit that Defendant has also made

another Section 101 argument for the asserted claims of the '085 and '398 patents, which was addressed in Dr. Yun's report. (Pls.' MIL No. 3 at 1; Ex. 1 at 191-194, 214-218; Ex. 2 at 165-166.) The inclusion of the Section 101 argument for the '870 patent in the Pre-Trial Order has not surprised or prejudiced Plaintiffs because they were made aware of the argument in Defendant's contentions and had the opportunity to respond to Section 101 arguments that were included in an expert report. Neither did Plaintiffs raise this "new" argument during expert discovery, when they had the opportunity to depose Dr. Yun regarding the Defendant's Section 101 arguments.

Additionally, Plaintiffs' Motion in Limine No. 3 is not properly raised as a motion in limine. Instead, Plaintiffs are really asking the court to "make a dispositive ruling on the merits of [the] invalidity contentions." *Automatic Equip. Mfg. Co. v. Danko Mfg.*, LLC, No. 8:19-CV-162, 2021 WL 4078282, at *5 (D. Neb. Sept. 8, 2021) (denying the motion to limit invalidity evidence because it should have been raised as a dispositive motion, and that deadline had passed). If a party is seeking to exclude evidence that was raised in a party's contentions, the party should have raised the issue prior to the dispositive motion deadline. *Id.* at *4. There is no prejudice to the party seeking exclusion because the party already had a chance to ask for clarification, but failed to do so. *Id.*  Thus, Plaintiffs' argument that that it is prejudiced fails.

Fresenius Kabi has agreed that it will not offer testimony from Dr. Yun on the issue. However, Plaintiffs cannot limit Fresenius Kabi from raising the serious Section 101 issues through Plaintiffs' fact and expert witnesses. Accordingly, Plaintiff's Motion in Limine No. 3 should be dismissed in its entirety.

Dated: December 8, 2021                 Respectfully submitted,

                                        Farnan LLP


                                        */s/     Brian E. Farnan*
                                        Brian E. Farnan (#4089)
                                        Michael J. Farnan (#5165)
                                        919 North Market Street, 12th Floor
                                        Wilmington, DE 19801
                                        (302) 777-0300
                                        bfarnan@farnanlaw.com
                                        mfarnan@farnanlaw.com

                                        OF COUNSEL:

                                        Imron T. Aly (admitted *pro hac vice*)
                                        Joel M. Wallace (admitted *pro hac vice*)
                                        Schiff Hardin LLP
                                        233 S. Wacker Drive, Suite 7100
                                        Chicago, IL 60606
                                        (312) 258-5500
                                        ialy@schiffhardin.com
                                        jwallace@schiffhardin.com

                                        John K. Hsu
                                        SCHIFF HARDIN LLP
                                        901 K Street NW
                                        Suite 700
                                        Washington, DC 20001
                                        202.778.6400 (tel.)
                                        202.778.6460 (fax)
                                        jhsu@schiffhardin.com

                                        *Attorneys for Defendant*
                                        *Fresenius Kabi USA, LLC*

4

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 19-C**

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 3**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| FERRING PHARMACEUTICALS INC., FERRING INTERNATIONAL CENTER, S.A., FERRING B.V., and POLYPEPTIDE LABORATORIES A/S | ) ) ) ) ) | |
| | ) | C.A. No. 20-cv-431 (MN) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FRESENIUS KABI USA, LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION *IN LIMINE* NO. 3**

Joshua P. Davis
811 Main Street
Suite 3130
Houston, TX 77002

WOMBLE BOND DICKINSON (US) LLP
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
John B. Bourke (#6534)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320

*Of Counsel*

*Counsel for Plaintiffs*

Dated: December 13, 2021

As reflected in Fresenius's invalidity contentions (and now Fresenius's Exhibit 3 to the Pretrial Order), the Section 101 arguments that Fresenius advances for the CV patents and the '870 patent are similar. Despite their similarity, Fresenius's expert provided only a Section 101 opinion on the CV patents, not the '870 patent. Plaintiffs reasonably believed that Fresenius was no longer advancing a Section 101 argument on the '870 patent, and thus Plaintiffs' experts did not provide opinions on that issue. Plaintiffs will be prejudiced if Fresenius is now permitted to make a Section 101 argument on the '870 patent at trial without their experts having had the opportunity to address this issue during expert discovery.

Fresenius first argues that "[t]he inclusion of the Section 101 argument for the '870 patent in the Pre-Trial Order has not surprised or prejudiced Plaintiffs because they were made aware of the argument in Defendant's contentions and had the opportunity to respond to Section 101 arguments that were included in an expert report." (Fresenius Resp. at 3.) Contrary to Fresenius's arguments, Plaintiffs did not have the opportunity to respond to Section 101 arguments on the '870 patent as Dr. Yun provided no such opinions. For that reason alone, the argument should be excluded. Fresenius then confusingly argues that Plaintiffs did not "raise this 'new' argument during expert discovery, when they had the opportunity to depose Dr. Yun regarding the Defendant's Section 101 arguments." (Fresenius Resp. at 3.) Plaintiffs had no reason to question Dr. Yun on a Section 101 argument directed to the '870 patent as Dr. Yun provided no such opinions. Fresenius additionally argues that this motion "is not properly raised as a motion in limine," citing to a case from the District of Nebraska. (Fresenius Resp. at 3.) As explained in Plaintiffs' reply in support of Motion *In Limine* No. 2 (Ex. 18-C to the Pretrial Order), that case is inapposite because, here, Plaintiffs are moving to preclude Fresenius from making an argument it dropped during expert discovery.

Dated: December 13, 2021                          Respectfully submitted,

Of Counsel:

                                                 _/s/ Mary W. Bourke_
Joshua P. Davis                                  Mary W. Bourke (#2356)
811 Main Street                                  Dana K. Severance (#4869)
Suite 3130                                       Daniel M. Attaway (#5130)
Houston, TX 77002                                John B. Bourke (#6534)
                                                 Womble Bond Dickinson (US) LLP
                                                 1313 North Market Street, Suite 1200
                                                 Wilmington, DE 19801
                                                 Telephone: (302) 252-4320
                                                 Mary.Bourke@wbd-us.com
                                                 Dana.Severance@wbd-us.com
                                                 Daniel.Attaway@wbd-us.com
                                                 Ben.Bourke@wbd-us.com

                                                 _Counsel for Plaintiffs_