13:12:40

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE



FERRING PHARMACEUTICALS, INC., )
et al.,                        )
                               )
          Plaintiffs,          )
                               ) C.A. No. 20-431(MN)
v.                             )
                               )
FRESENIUS KABI USA, LLC,       )
et al.,                        )
                               )
          Defendants.          )




                    Tuesday, January 11, 2022
                    2:00 p.m.
                    Pretrial Hearing (Remote)



                    844 King Street
                    Wilmington, Delaware




BEFORE:  THE HONORABLE MARYELLEN NOREIKA
            United States District Court Judge




APPEARANCES:


               WOMBLE BOND DICKINSON
               BY:  MARY W. BOURKE, ESQ.
               BY:  DANIEL ATTAWAY, ESQ.
               BY:  JOSHUA DAVIS, ESQ.
               BY:  DANA K. SEVERANCE, ESQ.
               BY:  BEN BOURKE, ESQ.


                         Counsel for the Plaintiffs
```

1    APPEARANCES CONTINUED:

2

3            FARNAN LLP
             BY:  MICHAEL J. FARNAN, ESQ.
4
             -and-
5
             SCHIFF HARDIN LLP
6            BY:  IMRON T. ALY, ESQ.
             BY:  JOEL M. WALLACE, ESQ.
7

8                    Counsel for the Defendants

9

10                 _ _ _ _ _ _ _ _ _

13:51:30  11

13:56:54  12            THE COURT:  Good afternoon, counsel.  Who is

13:56:57  13    there, please?

14:04:13  14            MS. BOURKE:  Good afternoon, Your Honor.  This

14:04:15  15    is Mary Bourke from Womble Bond Dickinson, representing the

14:04:21  16    Ferring plaintiffs.  And I have with me Dana Severance, Josh

14:04:26  17    Davis, Daniel Attaway and Ben Bourke.  We also have a client

14:04:31  18    representative from Copenhagen, Anna-Katherine Fevre who I

14:04:37  19    believe is also on the line.

14:04:38  20            THE COURT:  All right.  Good afternoon to all of

14:04:40  21    you.

14:04:40  22            MR. FARNAN:  Good afternoon, Your Honor.  It's

14:04:44  23    Michael Farnan for the defendants.  With me on the line is

14:04:46  24    Imron Aly and Joel Wallace from Schiff Hardin.  We also have

14:04:52  25    Ryan Daniel who is the head of IP at Fresenius.  And Mr. Aly

14:04:53  1    will be taking the lead today.

14:04:55  2             THE COURT:  All right.  Thank you and good

14:04:57  3    afternoon to all of you as well.  So we have reviewed the

14:05:01  4    pretrial order that was submitted.  It looks like from the

14:05:06  5    letter that we received last week that all of plaintiffs'

14:05:11  6    motions in limine are moot after the case narrowing.  Is

14:05:17  7    that correct, Ms. Bourke?

14:05:19  8             MS. BOURKE:  Your Honor, yes.  This is Mary

14:05:21  9    Bourke.  Yes, that is correct.

14:05:23 10             THE COURT:  Okay.  So then we had defendants'

14:05:25 11    motion in limine number one that is still out there.

14:05:31 12    Correct?

14:05:33 13             MR. ALY:  This is Imron Aly.  Yes, that's

14:05:38 14    correct.

14:05:38 15             THE COURT:  Okay.  So I have reviewed that

14:05:41 16    motion.  I am going to deny it.  It appears that plaintiffs'

14:05:46 17    understanding of the meaning of undesirable health effects

14:05:50 18    may have shifted somewhat, but I can't tell if they're

14:05:54 19    putting forward a new construction or not, so I guess where

14:06:00 20    I come out on this one is if plaintiffs think that the plain

14:06:05 21    and ordinary meaning is something specific based on what

14:06:09 22    particular side effects are addressed in the patent, you're

14:06:12 23    going to have to use your time at trial and probably let me

14:06:16 24    evaluate the credibility of your expert on that issue.  And

14:06:20 25    defendants can cross-examine.

14:06:23 1         And defendants, it seems like the real issue on

14:06:26 2 this one is definiteness, so you're going to argue

14:06:32 3 definiteness of this term, undesirable side effects, at

14:06:36 4 trial, right, Mr. Aly?

14:06:38 5         MR. ALY:  Yes, Your Honor.

14:06:40 6         THE COURT:  And so already we're going to be

14:06:43 7 talking about what this term means and what the metes and

14:06:49 8 bounds if they can be determined are, so it doesn't seem

14:06:52 9 like I should deal with the purported change in position.

14:07:00 10 So that motion is denied.

14:07:02 11         Okay.  Now we have --

14:07:04 12         MR. ALY:  Your Honor, it's Imron Aly.  I don't

14:07:07 13 mean to add things but I just want to be clear.  I

14:07:10 14 understand the ruling.  To be clear, if there is a

14:07:12 15 resolution on the claim, undesirable, that it meant the two

14:07:18 16 categories in the independent claim, claim 1, then we

14:07:21 17 wouldn't have the indefiniteness argument at trial because

14:07:25 18 it would be broad enough to encompass the issues that we'll

14:07:29 19 be presenting in the case.

14:07:31 20         THE COURT:  I don't really know what that means.

14:07:34 21 But whatever, I'm not going to change my ruling at this

14:07:36 22 point.  We'll figure it out during the trial.

14:07:39 23         Okay.  So now we have the narrowing.  I got the

14:07:47 24 letter on the narrowing, and I appreciate you doing that.

14:07:51 25 It seemed like it was pretty much the minimum that could

14:07:55 1    have been done, especially the defendants.  Plaintiffs seem

14:07:55 2    to have dropped the weakest patent family and a couple of

14:07:55 3    other claims and defendants dropped defenses that were

14:08:07 4    apparently so shaky that even its experts didn't offer

14:08:08 5    opinions supporting that.  So as I said, I am grateful you

14:08:13 6    decided to drop things, but it seems like that absent

14:08:17 7    further agreement we have eleven claims each of which has a

14:08:20 8    challenge to infringement and between two and four validity

14:08:24 9    challenges.

14:08:25 10           Is that right, Ms. Bourke?

14:08:28 11           MS. BOURKE:  Your Honor, this is Mary Bourke.

14:08:30 12           I would say there are eleven asserted claims.  I

14:08:34 13   would say that there are two patents in one patent family

14:08:38 14   for which the defendants have not proffered a

14:08:44 15   non-infringement position with their expert.  So the claims

14:08:47 16   -- I have to count those claims, it's probably four have no

14:08:54 17   non-infringement position presented by --

14:08:57 18           THE COURT:  They haven't conceded, I suppose

14:09:03 19   Fresenius hasn't conceded that plaintiffs have met their

14:09:06 20   burden but they haven't put forward a non-infringement

14:09:09 21   opinion with their expert, is that where we are?

14:09:12 22           MS. BOURKE:  That is correct, Your Honor.

14:09:12 23           THE COURT:  Okay.  Can you tell me which claims

14:09:15 24   those are?

14:09:18 25           MS. BOURKE:  Just one minute.

14:09:22  1                    MR. ALY:  Your Honor, I can help if that would

14:09:25  2      be appropriate.

14:09:25  3                    THE COURT:  Go ahead, Mr. Aly.

14:09:28  4                    MR. ALY:  It's the same as the undesirable term

14:09:30  5      claim and that related issue.  It's claims 3 and 13 of the

14:09:33  6      '359 patent and claims 16 and 26 of the '739 patent.

14:09:42  7                    MS. BOURKE:  That's correct, Your Honor.  This

14:09:44  8      is Mary Bourke.

14:09:45  9                    THE COURT:  Okay.  So that helps.  Thank you.

14:09:51 10                    Now, there was a mention in the parties' letter

14:09:58 11      about discussions of further stipulations.  Is there

14:10:01 12      anything more on that?

14:10:05 13                    MS. BOURKE:  Those were negotiations between the

14:10:09 14      parties and there is no resolution on that at this moment,

14:10:13 15      Your Honor.

14:10:13 16                    THE COURT:  How many actual issues am I dealing

14:10:16 17      with?  Is there any agreement that there are claims that

14:10:19 18      will rise and fall together on the issues, so you know, the

14:10:24 19      same issue for infringement affects multiple claims, so if I

14:10:30 20      go one way all those claims are infringed, if I go the other

14:10:33 21      way all of them are not infringed and the same with

14:10:36 22      validity.  Is there anything like that?

14:10:41 23                    MR. ALY:  Imron Aly here, Your Honor.

14:10:44 24                    There isn't yet, but there should be and we'll

14:10:47 25      continue that dialog.  And we're offering and discussing

14:10:50 1    broader stipulations with regard to claim narrowing and just

14:10:54 2    having agreed facts that would help reduce trial testimony

14:10:59 3    substantially.

14:11:00 4            THE COURT:  Okay.  So when do you think you're

14:11:02 5    going to be in a position to figure out if there is going to

14:11:07 6    be agreement with those things?

14:11:09 7            MR. ALY:  I hope as far as the first issue on

14:11:11 8    the rise and fall agreement we're ready to do that now and

14:11:14 9    it would be the claims we talked about from the side effects

14:11:18 10   patents, the '359 and '739, and then the claims that are --

14:11:22 11   because those are nearly identical and there are claims that

14:11:26 12   are nearly identical in what are called the cardiovascular

14:11:30 13   side effect patent, those are '035 and '398.

14:11:35 14           THE COURT:  When you said rise and fall

14:11:37 15   together, is that just on infringement or is that on the

14:11:39 16   validity defenses as well?

14:11:42 17           MR. ALY:  Validity as well.  They're nearly

14:11:44 18   identical claims.  There are a few words that are different

14:11:47 19   that don't have any meanings that anybody has put to them so

14:11:51 20   far.

14:11:51 21           THE COURT:  Okay:  Ms. Bourke, do you have any

14:11:54 22   thoughts on when a stipulation or more than one stipulation

14:11:58 23   might be forthcoming if the parties are going to agree?

14:12:02 24           MS. BOURKE:  Right now, I don't think it's

14:12:05 25   close.  I mean, we have to have further discussions.  There

14:12:08 1    have been stipulations that have been proposed, but I would

14:12:13 2    just note they're not in front of Your Honor, so there is no

14:12:16 3    reason to discuss the substance on them.  But some of them

14:12:20 4    are not really narrowing issues, and presenting it has made

14:12:27 5    other stipulations contingent on us agreeing to certain

14:12:31 6    other stipulations for which there are disputed facts

14:12:35 7    amongst the experts and the parties --

14:12:37 8              THE COURT:  So just so I understand, is it

14:12:39 9    plaintiffs' position that there are any claims that rise and

14:12:43 10   fall together either for infringement or validity or both?

14:12:50 11             MS. BOURKE:  I do believe there are claims of

14:12:53 12   the patents, but the side effects patent and the

14:12:56 13   cardiovascular patents that will rise and fall together,

14:12:59 14   they're similar in nature, those are the claims in the --

14:13:03 15             THE COURT:  Okay.  Go ahead.

14:13:05 16             MS. BOURKE:  There are two claims, there is one

14:13:09 17   claim in each of the patents, claim 2 of the '085 and claim

14:13:16 18   2 of the '398, those rise and fall together both on

14:13:19 19   infringement and validity.  And there are --

14:13:22 20             THE COURT:  Even though -- but one of those

14:13:25 21   patents has an anticipation defense that the other one

14:13:28 22   doesn't because defendants withdrew it.  Right?

14:13:32 23             MS. BOURKE:  That is correct.

14:13:34 24             THE COURT:  Okay.  All right.  So you think that

14:13:38 25   the cardiovascular patent, claim 2 of the '085, claim 2 of

14:13:43 1    the '398 rise and fall together.  And Mr. Aly, do defendants

14:13:48 2    disagree with that?

14:13:49 3               MR. ALY:  No, Your Honor, we agree on that.

14:13:51 4               THE COURT:  Okay.  And Ms. Bourke, what is

14:13:54 5    plaintiffs' position on the side effect patents?

14:13:57 6               MS. BOURKE:  Of the two side effect patents, the

14:14:02 7    '359 and the '739, the two claims asserted in both of those,

14:14:06 8    claims 3 and 13 of the '359 and claims 16 and 26 of the

14:14:11 9    '739, those will rise and fall together on both infringement

14:14:15 10   and validity.

14:14:17 11              THE COURT:  Okay.  And Mr. Aly, does the

14:14:19 12   defendants agree with that?

14:14:21 13              MR. ALY:  We do agree with that, that's right.

14:14:23 14              THE COURT:  Okay.  So then we're just left with

14:14:26 15   claims 3, 5, 8, and 14 of the '870 and claim 10 of the '938

14:14:35 16   patent.  And do claims 3, 5, 8, and 14 at least of the '870

14:14:42 17   patent rise and fall with each other or not?

14:14:50 18              MR. ALY:  Imron Aly, Your Honor.

14:14:52 19              They do not because they all depend on claim 1.

14:14:55 20   They add a separate thing to claim 1 of that patent.

14:15:00 21              THE COURT:  And is the issue there one of

14:15:02 22   infringement so what they add defendants say is not there or

14:15:02 23   is it an issue of validity?

14:15:12 24              MR. ALY:  Your Honor --

14:15:12 25              MS. BOURKE:  Both, Your Honor.  Sorry, this was

14:15:19 1    Mary Bourke.  It was both.

14:15:20 2            THE COURT:  All right.  That's at least helpful

14:15:22 3    in helping me to understand how many issues we have.

14:15:25 4            Plaintiffs have five witnesses that it will

14:15:28 5    call.  One of those appears to be Dr. Higano.  Am I correct

14:15:34 6    that Dr. Higano is no longer going to be needed?

14:15:38 7            MS. BOURKE:  That is correct, based on the

14:15:43 8    dismissal of the patents.

14:15:47 9            THE COURT:  So now that the plaintiffs have four

14:15:50 10   witnesses that it will call and fourteen listed that maybe

14:15:55 11   they will call, how many of those fourteen are plaintiffs

14:15:58 12   thinking really are going to be testifying at trial?

14:16:04 13           MS. BOURKE:  One.  From the may call list?

14:16:09 14           THE COURT:  Yes.

14:16:11 15           MS. BOURKE:  There are currently three witnesses

14:16:13 16   in Europe, and two of which are experts on the '938 patent,

14:16:21 17   one of which is a fact witness.  And there are two witnesses

14:16:30 18   that are treating physicians that are here in the United

14:16:34 19   States.  That's a total of five witnesses for the

14:16:36 20   plaintiffs.

14:16:37 21           THE COURT:  Okay.  And then what about the

14:16:39 22   defendants, the defendants have three witnesses listed as

14:16:42 23   the will call and another twelve maybe by deposition.  How

14:16:49 24   many of those do you think are actually going to be

14:16:51 25   testifying?

14:16:53 1                    MR. ALY:  Of the maybes, there would be nine

14:16:55 2      live, but we do have some by deposition transcript and at

14:16:59 3      this time we have identified four by deposition.

14:17:04 4                    MS. BOURKE:  That's also true just by way of

14:17:07 5      clarification for the plaintiffs, that on the may call by

14:17:11 6      deposition, we have some that we may call by deposition.

14:17:15 7                    THE COURT:  And I'm trying to figure out -- I'm

14:17:17 8      sorry.  I wasn't clear.  I'm trying to figure out how many

14:17:20 9      we have.  So what are you thinking you're going to do on

14:17:24 10     those depositions?

14:17:26 11                   MS. BOURKE:  I don't have a number for you right

14:17:29 12     now, Your Honor, but I think it would be at most five, and

14:17:34 13     limited, very limited deposition testimony at that.

14:17:38 14                   THE COURT:  Okay.  All right.  So next I want to

14:17:44 15     talk about the trial.  I have plaintiffs' request to

14:17:48 16     postpone the trial to the second half of February.  I don't

14:17:51 17     think that's going to work from a scheduling perspective,

14:17:55 18     but I do want to hear from the parties.  So plaintiffs'

14:17:59 19     request, let me hear from you first.

14:18:02 20                   MS. BOURKE:  Sure, Your Honor.  This is Mary

14:18:04 21     Bourke.

14:18:06 22                   I don't want to repeat things that I think the

14:18:08 23     Court is well aware of.  The COVID situation has rapidly

14:18:12 24     worsened over the past few weeks.  And as it currently

14:18:15 25     stands, none of our witnesses are comfortable coming to

14:18:25 1    Delaware.  We have I think as we mentioned in our letters

14:18:31 2    one of our witnesses from Europe tested positive for COVID

14:18:36 3    and is not able to travel until she gets a negative COVID

14:18:43 4    test and that has not happened yet.  The other witnesses

14:18:45 5    from Europe are a bit concerned about the international

14:18:49 6    travel which is apparently where a lot of the virus gets

14:18:55 7    transmitted because the flight is over four hours.  There is

14:19:00 8    also concern about catching COVID here and --

14:19:04 9              THE COURT:  But I get it, but we can deal with

14:19:06 10   that, people can appear remotely.  So my problem is, you

14:19:11 11   want me to deal with an awful lot of issues and you're

14:19:15 12   cutting me off on the amount of time.  So I need to know how

14:19:19 13   we're going to do this because I think we need to get it

14:19:22 14   done sooner rather than later.  The way you all have it done

14:19:25 15   we're going to have briefing done in April or later and you

14:19:28 16   want me to make a decision by August.  I cannot do that.  So

14:19:33 17   either I need to understand the defendants have not a prayer

14:19:37 18   of getting approval by the time of the end of the

14:19:41 19   thirty-month stay or I need to understand what it is that

14:19:42 20   plaintiffs think is going to happen when I can't get a

14:19:42 21   decision out.  So I get it that there is COVID, but I had

14:19:50 22   remote trials before, I don't really like them, but we could

14:20:00 23   do that.  Why can't we do a remote trial?

14:20:02 24              MS. BOURKE:  We could do a remote trial, Your

14:20:02 25   Honor.  This is Mary Bourke again.  I just don't think it's

14:20:09 1   feasible to get that done next week.  We have --

14:20:12 2            THE COURT:  What if I said you have to?  What if

14:20:15 3   I said you have to?  My gosh, we do Zoom remote hearings all

14:20:19 4   the time.  Why is a trial so much more difficult?

14:20:24 5            MS. BOURKE:  I mean, I'm going to defer to

14:20:26 6   Mr. Davis and Mr. Attaway who have had the discussions both

14:20:30 7   with our IT, internal IT group as Your Honor had ordered as

14:20:35 8   well as external vendors and they can explain why it's just

14:20:40 9   not technically feasible to have it done next week.

14:20:44 10            THE COURT:  What if I say we're just going to

14:20:46 11   have to do it, Mr. Attaway, what if I say you have to go

14:20:50 12   forward, what are we going to do?

14:20:52 13            MR. ATTAWAY:  Your Honor, this is Daniel

14:20:54 14   Attaway.  If you tell us we have to go forward, I think the

14:20:57 15   problem is going to be that there is not going to be enough

14:21:01 16   time to have adequately tested everything, especially for

14:21:04 17   the witnesses in Europe to make sure that you're not going

14:21:07 18   to have technical issues with -- technical issues with the

14:21:12 19   way everything is going to run.  I can tell you from having

14:21:15 20   done a remote trial with European witnesses before, just

14:21:15 21   because of the time difference there are certain issues that

14:21:21 22   will -- that take a few days to work out before trial to

14:21:27 23   make sure that there is not going to be problems.

14:21:29 24            THE COURT:  But don't we have a week?  Don't we

14:21:32 25   have a week to do that?

14:21:34 1          MR. ATTAWAY:  Well, Your Honor, I'll tell you

14:21:36 2     that we talked to our internal IT people and we talked to

14:21:40 3     the people that have done remote trials for us before, and

14:21:44 4     their -- frankly their position was that a week is not

14:21:48 5     enough time with witnesses in Europe.

14:21:50 6          THE COURT:  But you know -- I get it, a week --

14:21:55 7     maybe you're saying now a week is not enough time.  The

14:21:58 8     trial has been scheduled for over a year.  No postponement

14:22:02 9     has been granted.  So please tell me that you have been

14:22:06 10    proceeding with the understanding that the trial will go

14:22:08 11    forward, right?

14:22:10 12         MR. ATTAWAY:  I mean, yes, Your Honor, we have

14:22:12 13    been proceeding with the understanding that the trial will

14:22:15 14    go forward.

14:22:15 15         THE COURT:  Have you taken steps to get things

14:22:18 16    set up or are you just going to start from scratch today?

14:22:24 17         MS. BOURKE:  We have not taken steps to get

14:22:26 18    things set up yet, Your Honor.

14:22:27 19         THE COURT:  All right.

14:22:28 20         MS. BOURKE:  It was not ordered to be remote,

14:22:30 21    and quite frankly it's an expense and a lot of transferring

14:22:35 22    of equipment and materials overseas.  And so -- and we also

14:22:41 23    --

14:22:41 24         THE COURT:  If I give you an option to have the

14:22:47 25    trial live, which I'm perfectly happy to have, we'll have

14:22:51 1   the trial live or remote, which choice do you have?  You're

14:22:56 2   saying well, Your Honor, you didn't tell me it was going to

14:22:59 3   be remote so I haven't bothered to do anything.  I haven't

14:23:03 4   told you that it's off and going to be live, so does that

14:23:06 5   mean you're prepared to come live?

14:23:08 6          MS. BOURKE:  I said I have a witness that has

14:23:10 7   COVID currently that has told me in no uncertain terms that

14:23:16 8   she cannot come.

14:23:17 9          THE COURT:  So then you should have been getting

14:23:20 10  ready to at least present that witness's testimony remotely.

14:23:24 11         MS. BOURKE:  But she's been sick.  I have not

14:23:27 12  been able to prepare her.  She's been sick with COVID and I

14:23:31 13  can't prepare a witness that's ill over remote means.  I

14:23:37 14  have two previous --

14:23:39 15         THE COURT:  I am not -- right now I'm thinking

14:23:42 16  -- let me ask you this.  If I postpone the trial because you

14:23:46 17  have asked me to, and I don't have enough time to issue an

14:23:51 18  opinion, will the plaintiffs refrain from filing a motion

14:23:56 19  for preliminary injunction?

14:24:00 20         MS. BOURKE:  I understand how busy the Court is.

14:24:02 21  I don't think that we have right now, or that my client

14:24:02 22  wishes to give up its right to file a preliminary injunction

14:24:11 23  if necessary.  But I also hadn't heard whether the

14:24:18 24  defendants have a product that would even be approved within

14:24:21 25  that time.  I understand that they have received a complete

14:24:24 1    response letter and that takes either six to nine months

14:24:28 2    period of time to respond to, and I haven't heard from them

14:24:31 3    that they are going to have approval in August.

14:24:35 4             THE COURT:  All right.  So hold on.  I do want

14:24:42 5    to ask about that issue because that is going to factor into

14:24:46 6    my decision.  But I need to know if there is anyone on this

14:24:52 7    line who is not covered by the protective order.  Do we know

14:24:57 8    that?

14:25:00 9             MS. BOURKE:  Anna-Katherine, the client

14:25:02 10   representative that is on the line is covered by the

14:25:05 11   protective order.  I can represent that for Ferring and all

14:25:09 12   of the counsel here in the room are covered.

14:25:12 13            THE COURT:  All right.  Mark, do we know how

14:25:19 14   many people are on the line and are they all accounted for?

14:25:24 15            COURT CLERK:  Judge, I do not know.  I can ask

14:25:28 16   -- I do know that the one client representative is on, but

14:25:32 17   everyone else is counsel.

14:25:35 18            THE COURT:  But do we know if there is anyone

14:25:38 19   who is not affiliated with a party who is on the line?

14:25:41 20            COURT CLERK:  I do not know that for a fact

14:25:44 21   certain.  I don't think there is.  No one has called to

14:25:48 22   request the line number to listen in or anything.

14:25:52 23

24             (Page 16, Line 23 through Page 17, line 25

25    sealed under separate cover.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

14:27:27 1          THE COURT:  Okay.  Well, I guess then we're

14:27:37 2    going to have to go forward with the trial next week and

14:27:40 3    you're going to have to figure out how you want to do it.

14:27:43 4    You guys can talk to each other, or I guess, defendants

14:27:47 5    what's your position on all of this?

14:27:48 6          MR. ALY:  Your Honor, Imron Aly here.

14:27:50 7    Fresenius' preference is to proceed next week with trial

14:27:55 8    virtually and we're planning for that purpose and I would

14:27:59 9    report that a vendor, FTI that told us they have been

14:28:03 10   contacted by both sides to reach out and prepare as of

14:28:06 11   January 4th, so that's what we have been planning to go

14:28:09 12   forward with that alternative.  And we also have the in

14:28:12 13   person plans ready with proposals if that's the path that

14:28:17 14   Your Honor chooses.  Fresenius is flexible recognizing the

14:28:21 15   sensitive issue that you're dealing with.

14:28:26 16          THE COURT:  Okay.  Hold on one second.  Well,

14:28:33 17   then, it sounds like it's possible.  So what I am going to

14:28:36 18   do is say let's leave the trial on for next week.

14:28:40 19          MR. ATTAWAY:  I apologize, Your Honor.  Daniel

14:28:42 20   Attaway.  I just wanted to follow-up with what Mr. Aly said.

14:28:42 21   Both parties have been in touch with FTI and they -- one of

14:28:51 22   the conditions for being able to get everything ready is

14:28:51 23   that we're going to need a fair amount of access to the

14:28:52 24   court to be able to get everything set up assuming there is

14:29:02 25   going to be portions in person and -- they told us that two

14:29:07 1    weeks would be the minimum of what time they would need to

14:29:10 2    be able to get things ready to ensure that they would work

14:29:13 3    and there wouldn't be the potential for significant

14:29:17 4    disruption during the court and trial day.

14:29:19 5            So I understand the trial is scheduled for next

14:29:21 6    week.  I guess my question is, if there is any -- and I

14:29:26 7    understand that the end of February it sounds like will not

14:29:29 8    work for Your Honor, but is there a potential to move the

14:29:33 9    trial at least a week to give the parties enough time to

14:29:36 10   make sure that we're not going to waste the Court's time in

14:29:39 11   getting everything set up?

14:29:49 12           THE COURT:  Let me ask you this, Mr. Attaway.

14:29:57 13   You said you need that time if it's going to be part live,

14:30:02 14   part remote.  It seems like nobody wants to come here

14:30:06 15   particularly, so what if it were all remote, does that help

14:30:09 16   you with your timeline?

14:30:11 17           MR. ATTAWAY:  I don't know that it necessarily

14:30:14 18   does.  Again, because of the European witnesses, and I

14:30:17 19   apologize for digressing, but if we have to ship them

14:30:25 20   equipment, it takes two to three days to get to Europe and

14:30:28 21   we have had that issue before that equipment was shipped and

14:30:31 22   it worked perfectly when it left New York and it got to

14:30:35 23   Europe and it didn't work and it took another two or

14:30:38 24   three days to get there.  When you factor in the weekend

14:30:42 25   that becomes seven or eight days to get things moved around.

14:30:44  1          And even then, just making sure that Your Honor

14:30:46  2    has a solid feed that isn't going to have a problem and that

14:30:51  3    everyone has access and just checking everything to make

14:30:54  4    sure it works --

14:30:55  5          THE COURT:  All right.  Mr. Aly, what about

14:30:59  6    Mr. Attaway's suggestion that we push it a week?  It so

14:31:02  7    happens that I have a jury trial the following week that has

14:31:05  8    been postponed.  Can defendants do it if we start on either

14:31:11  9    Monday the 24th and go through Thursday, or Tuesday the 25th

14:31:15 10    and go through Friday?

14:31:18 11          MR. ALY:  Your Honor, quite likely, yes, but I

14:31:21 12    would just have to check our expert witness schedule because

14:31:24 13    they're physicians.  I'll just need to confirm that which we

14:31:27 14    can do in a matter of a couple of hours today, but otherwise

14:31:30 15    we'll make our team ready and available to be virtual next

14:31:34 16    week or the following week.

14:31:35 17          THE COURT:  Okay.  Mr. Attaway, does that help

14:31:38 18    you out if we check on availability of witnesses and if

14:31:42 19    folks are available, we do it starting either the 24th or

14:31:46 20    the 25th?

14:31:48 21          MR. ATTAWAY:  I believe that that would make me

14:31:52 22    much more comfortable in being sure that we're not going to

14:31:55 23    waste Your Honor 's time.

14:31:57 24          THE COURT:  You wouldn't be wasting my time

14:31:59 25    because any time for things that are down comes out of the

parties' time, so you would be wasting your own time.  But I
am sensitive that you don't want to do that either.

MR. ATTAWAY:  Right.  I think that probably
Mr. Aly would also agree with me that if the parties are
going to be charged for downtime we want to make as sure as
possible that everything is going to work without a hitch.

THE COURT:  All right.  Why don't you guys go
talk to each other about that and see what the availability
is and whether there are any issues and if the parties can
go forward the following week, whether you want to start on
the Monday or the Tuesday.

All right.  So let's talk about the trial days.
The trial days are generally going to run from 8:30 to
6:00 p.m.  We'll take a fifteen-minute break in the morning,
a lunch break of thirty to forty-five minutes, and a
fifteen-minute break in the afternoon.  If we need to start
a little bit earlier than that because we have witnesses in
Europe, we can.  I'm not going to come in here at 6:00 a.m.,
but we can come in earlier than 8:30 if it makes it easier
for witnesses in Europe.

We will start on either the -- well, I guess
we'll figure out if we're going to start next week or the
following week, but whatever we do we're going to go for
four days, or until the parties use up their time.  The
parties have asked for eleven hours each.  I am going to

14:33:48 1   give you each ten hours, nine hours for opening and

14:33:52 2   presenting your case in chief and dealing with evidentiary

14:33:56 3   issues, and one additional hour for closing argument.

14:34:00 4          Now, the hour that I have for closing argument,

14:34:04 5   you're not limited to that hour for closing.  If you have

14:34:07 6   additional time left from the ten, you can use that in your

14:34:11 7   closing, but you cannot use up more than ten hours and leave

14:34:15 8   yourself less than an hour for closing unless you get leave

14:34:21 9   of Court from that first.

14:34:25 10          So next, you're always on the clock.  As I said,

14:34:30 11   that means technical glitches generally will cost you time

14:34:34 12   unless for some reason I decide that it shouldn't.  So I

14:34:38 13   will ask that you try and do your best with the technology

14:34:42 14   issues.  Time for evidentiary arguments and other disputes

14:34:46 15   will be charged to the loser usually, but again, if I think

14:34:51 16   for some reason that it was a close call and I should split

14:34:58 17   the time differently, I will let you know and I will do

14:35:01 18   that.

14:35:02 19          I would like to hear closing as I find them

14:35:05 20   helpful.  We're not going to postpone them, though, closing

14:35:08 21   arguments will occur at the close of evidence and depending

14:35:12 22   on how we're doing on time, you know, I may give you

14:35:16 23   overnight to prepare them for the next day or you may have

14:35:20 24   to be relatively ready to go with them at the close of

14:35:24 25   evidence, it just depends on where we are.

With respect to setting up for trial, work with Mr. Buckson on that once we know when the trial is going to be.  If it turns out that -- it doesn't sound like there is going to be any portion of the trial that is live.  If the parties have any witnesses that they intend to have come live, let us know and we will figure out what the limitations on people in the courtroom are, but it doesn't sound like we're actually going to have that, so I'm not going to go through all of that until we know whether it's relevant.

For remote witnesses who are questioned, I want the display to show me the witness and any documents shown to the witness.  I don't want to go back and forth between the attorney and the witness when questions are being asked. And I also want for every remote witness to start with questions that establish whether any person is physically present with the witness or in any way in contact with the witness, whether the witness has any notes being used that we can't see, and instructions to alert us if that changes. We think these are all things we would know that are not the case if the witness were present, we want to make sure it's also not the case when the witness is testifying remotely.

For the courtroom, I'm generally disinclined to close the courtroom, but if any party anticipates having to seal the courtroom at any point, the party must keep to an

14:37:22 1    absolute minimum and provide sufficient advanced notice to

14:37:25 2    the other side and to me and I don't guarantee that I will

14:37:29 3    seal the record, but you can ask.  And since we're doing

14:37:33 4    this remotely, someone will have to figure out how we do

14:37:38 5    that and whether there are other folks on the line, so just

14:37:41 6    -- if you have a vendor, let your vendor know if that

14:37:46 7    happens they need to do it quickly and efficiently.

14:37:51 8              Paragraph 28 in the pretrial order refers to

14:37:57 9    exhibits that are pre-admitted.  Can someone tell me what

14:38:00 10   that means?

14:38:02 11             MR. ATTAWAY:  Your Honor, this is Dan Attaway.

14:38:05 12   I believe that that was lifted out of your preferences and

14:38:10 13   procedures, but I could be wrong.  I think the point was

14:38:16 14   simply to -- I want to make sure I'm talking about the

14:38:20 15   correct paragraph.

14:38:21 16             THE COURT:  Sure.  Go ahead and look.

14:38:24 17             MR. ATTAWAY:  I think this was meant to refer to

14:38:26 18   your preferences and procedures where if the joint trial

14:38:31 19   exhibit, they by definition have no objection to them, so as

14:38:35 20   long as they would be used by the witness, they're admitted

14:38:38 21   by operation of the pretrial order.

14:38:41 22             THE COURT:  Okay.  And that's fine.  What I want

14:38:44 23   to do, though, is it is helpful to me if you still offer

14:38:50 24   them for admission on the record because then it helps us to

14:38:54 25   keep track of what exhibits have been admitted.

14:38:59  1          MR. ATTAWAY:  Yes, Your Honor.  And that

14:39:01  2   actually brings up a question that I had marked to raise

14:39:04  3   with you because I realized it was not as clear as the

14:39:07  4   parties could have probably made it.  The parties had

14:39:10  5   contemplated not necessarily moving everything in as the

14:39:15  6   exhibits were used, but then within one week of the close of

14:39:19  7   the evidence submitting a joint list of the agreed upon

14:39:24  8   admitted exhibits that were used with the witness where

14:39:27  9   either there were no objections to the use or the objections

14:39:31 10   were overruled at trial.

14:39:32 11          THE COURT:  Yeah, I don't think that I want to

14:39:34 12   do that because again, we're not going to waste a week doing

14:39:38 13   that, a week of post-trial briefing.  You all have proposed

14:39:43 14   to get six weeks for post-trial briefing.  We need to

14:39:47 15   shorten that up, and using an extra week for you all to

14:39:50 16   figure out what exhibits have been admitted just seems like

14:39:54 17   a waste of time.  So I would prefer that you not do that.

14:39:58 18          Now, if you tell me you're going to do that and

14:40:01 19   you can still get your post-trial briefs in within a week or

14:40:04 20   ten days, then I probably don't care about that.  But I

14:40:10 21   think it's better if you offer things for admission so there

14:40:14 22   is no question about it.

14:40:16 23          MR. ATTAWAY:  Understood, Your Honor.

14:40:19 24          THE COURT:  Okay.  So that was in paragraph 37

14:40:26 25   which was the within one week of the close of evidence, and

14:40:31  1    as I said, I would prefer that we figure that out and keep

14:40:36  2    it in realtime and on the last day of trial you all know

14:40:40  3    exactly what documents have been admitted.  If you want

14:40:47  4    additional time afterward, I'll allow you that time, but the

14:40:51  5    parties then have to agree that it will not hold up the

14:40:56  6    briefing.

14:40:57  7              Paragraph 38(f) and paragraph 38(g) suggest a

14:41:06  8    disagreement about whether the parties are obligated to

14:41:09  9    exchange demonstratives to be used in opening statements

14:41:14 10    ahead of time.  That seems like that's pretty standard that

14:41:18 11    folks do that.  What's the problem here?

14:41:22 12              MR. ALY:  Your Honor, this is Imron Aly.  On

14:41:25 13    openings, in our prior trials, it just takes a lot of time

14:41:29 14    at the last minute to change the slides and it provides an

14:41:32 15    advantage to plaintiffs for preparing their openings, so we

14:41:36 16    wanted to do it as close as possible to the date but

14:41:40 17    couldn't get any agreement.  If it's possible to do it later

14:41:43 18    at night or before the openings happen in the morning,

14:41:46 19    that's what we would prefer.

14:41:47 20              THE COURT:  All right.  Who is going to handle

14:41:50 21    this?  Mr. Bourke is this you?  Is this your issue?

14:41:51 22              MR. BOURKE:  Yes, Your Honor.  This is Ben

14:41:58 23    Bourke for plaintiffs.  Plaintiffs have suggested a schedule

14:42:01 24    in which the demonstratives be exchanged at -- sorry, the

14:42:10 25    demonstratives be exchanged by 2:00 p.m. in which objections

14:42:14  1  could be made by 4:00 and then the meet and confer happen no

14:42:19  2  later than 5:00.  We suggested this to be consistent with

14:42:24  3  your preferences and procedures.  And if there is any other

14:42:31  4  option --

14:42:33  5          THE COURT:  Do I have a preference and procedure

14:42:36  6  on what time you do this for opening demonstratives?

14:42:41  7          MR. BOURKE:  No, Your Honor, you don't.  We just

14:42:44  8  wanted to ensure that the demonstratives be exchanged at

14:42:47  9  all.  Fresenius' position is that they aren't exchanged at

14:42:53 10  all, so we simply suggested a schedule for that to happen.

14:42:57 11          THE COURT:  All right.  I think that they should

14:42:59 12  be exchanged.  Perhaps you can exchange things a little bit

14:43:04 13  later in the day.  I don't think it will work to do it the

14:43:10 14  morning of trial because we start trial around 8:30 and any

14:43:13 15  disputes that you would have on those exhibits would have to

14:43:16 16  be brought to my attention via my judicial administrator by

14:43:22 17  7 o'clock in the morning, so it doesn't seem like it makes

14:43:26 18  sense to do it in the morning.  But why don't you see if you

14:43:31 19  can talk with each other about a time to exchange them a

14:43:34 20  little bit later in the day, see if there is something that

14:43:41 21  will work.  Does that work for you, Mr. Bourke?

14:43:44 22          MR. BOURKE:  Yes, Your Honor.

14:43:45 23          THE COURT:  And Mr. Aly?

14:43:46 24          MR. ALY:  It will work, Your Honor.

14:43:48 25          THE COURT:  All right.  Thank you.

14:43:49 1                    Okay.  Paragraph 51 contains a dispute about

14:43:55 2     whether deposition testimony may be used for

14:43:58 3     cross-examination or direct examination of an expert.

14:44:02 4     Plaintiffs would limit deposition testimony to those cited

14:44:06 5     by that expert while defendants would allow deposition

14:44:09 6     testimony to be used if the expert relied on it.  I'm not

14:44:15 7     sure I quite understand the difference or how you would know

14:44:20 8     someone relied on it if they didn't cite it or if they cited

14:44:23 9     it, how do you know in their head if they relied on it or

14:44:28 10    didn't rely on it.  So what's the issue here?

14:44:31 11                   MR. DAVID:  Your Honor, Joshua David --

14:44:41 12                   MR. ALY:  Your Honor, Imron Aly.  My opinion is

14:44:43 13    the dispute is about the pincite versus a reference to the

14:44:47 14    testimony and type of admission.  Therefore our proposal is

14:44:49 15    to rely on the properly identified as to what the person was

14:44:55 16    testifying in the testimony and then the parties can use it

14:44:58 17    with their expert in the deposition.  As an alternative for

14:45:02 18    now, we can suggest taking this up in the context of the

14:45:05 19    trial because it may vary depending on which pin citation

14:45:09 20    versus what reference is actually going to be proposed.

14:45:12 21                   THE COURT:  Mr., I'm sorry, I can't remember who

14:45:16 22    is handling this for the plaintiffs.

14:45:19 23                   MR. DAVIS:  Sorry, Your Honor.  This is Joshua

14:45:21 24    Davis for the plaintiffs.

14:45:22 25                   With respect to Mr. Aly talking about a pincite

versus a general reference, our concern here actually

mirrors actually what your concern was when you raised it

and that is if it's not actually -- the deposition testimony

is not cited in a report, it's really just a question of how

do we have notice that an expert supposedly was relying on

this deposition testimony, especially when we are

specifically talking about deposition designations that have

not otherwise been identified by the parties in the context

of paragraph 51.  So it's really just a question of notice

and whether or not we have notice that the expert relied on

the specific testimony.  To the extent that Mr. Aly is

suggesting that there are other alternative ways that we

would have had notice that they relied on the testimony

beside it being cited in a report, I'm not sure exactly what

it is that he has in mind.  But I think that we are working

towards the same thing, it's just a question of how it's

phrased and just making sure that the parties do not get

surprised at trial.

          THE COURT:  All right.  Why don't you guys go

talk about it a little bit more and see if there is really

an issue and whether it's something we can just deal with in

the moment at trial.

          Okay.  In the pretrial order the procedures for

disclosing exhibits, demonstratives, et cetera, don't

indicate a specific time by which the parties must raise

14:46:42 1    unresolved objections with me so we're going to use my

14:46:46 2    default procedure which is as follows:  If parties are

14:46:49 3    unable to reach agreement after meeting and conferring about

14:46:52 4    objections, they must e-mail my judicial administrator,

14:46:56 5    Diana Welham, by 7:00 a.m. on the day the witness is to

14:47:01 6    testify, the exhibit is to be used, the demonstrative is to

14:47:05 7    be used, or the deposition is to be played.  You should tell

14:47:07 8    me when you expect the witness will testify, before lunch or

14:47:10 9    after lunch, I will hear the objection in the morning or

14:47:13 10   during lunch and the time will be charged to the parties.

14:47:16 11   Any e-mail that was sent to Ms. Welham should attach a copy

14:47:21 12   of the objected to document.  And if possible highlight what

14:47:26 13   is being objected to.

14:47:30 14           Paragraph 72 highlights a dispute regarding

14:47:35 15   plaintiffs' assertion of privilege of the deposition of

14:47:38 16   Dr. Higano.  It seems like that is moot because she is not

14:47:42 17   going to be testifying.  Do I have that right?

14:47:46 18           MR. ALY:  Imron Aly.

14:47:48 19           Yes, Your Honor, we agree.

14:47:49 20           THE COURT:  Post-trial proceedings, briefing, I

14:47:52 21   already rejected the post-trial briefing schedule proposed

14:47:56 22   in paragraph 67.  The parties have now narrowed the proposal

14:48:00 23   from 800 pages to 480 pages, but that is without reply

14:48:05 24   briefs.  I usually want opening briefs on the issues on

14:48:08 25   which each party has the burden, answering brief and reply

14:48:13  1   brief as well as findings of fact that come in with the

14:48:16  2   opening brief and responsive finding of facts that come with

14:48:21  3   the answering brief.  I will address page limits at the end

14:48:26  4   of trial when I have a better understanding of the issues

14:48:29  5   and how much -- how many pages you might actually need.  But

14:48:36  6   when you are deciding what to pursue and what not to pursue

14:48:40  7   and what issues go together or don't go together, don't

14:48:44  8   count on having 480 pages, even if reply briefs.

14:48:50  9        I will expect hyperlinked briefs with pincites

14:48:54 10   taking me to precise parts of cited evidence that the

14:48:57 11   parties are relying on.  After the briefing is completed,

14:49:03 12   some parties have, and I have found it to be useful if you

14:49:07 13   don't wait until the very end and just give me all the brief

14:49:11 14   hyperlinks.  Sometimes it's nice if I can review the briefs

14:49:16 15   as they come in, but I don't know that I will actually have

14:49:18 16   time to do that, so I'll leave it up to you.

14:49:21 17        Errata, please review the trial transcript and

14:49:26 18   submit any agreed upon corrections to the court reporter no

14:49:29 19   later than a week after trial.  Again, this is something

14:49:32 20   that I would hope is being done even during trial if you

14:49:36 21   have someone who is reviewing this, trying to get this

14:49:39 22   underway, you don't want to waste too much time of the

14:49:42 23   post-trial proceedings with administrative or ministerial

14:49:42 24   matters.

14:49:45 25        I think as I mentioned before, you originally

14:49:53 1    proposed that I would get the briefing in seven weeks.  Now

14:49:57 2    in the letter that I have it's down to six weeks.  I'm

14:50:00 3    thinking something more like three weeks because you all are

14:50:06 4    going to have the issues on the top of your head and your

14:50:10 5    teams can get it done.  But we will discuss that and the

14:50:16 6    specifics of that at the end of trial when again I know I

14:50:20 7    have a better idea of what's out there and what we're going

14:50:24 8    to have to decide.

14:50:25 9          So those are the issues that we picked up from

14:50:29 10   the pretrial order and the other requests.  Is there

14:50:34 11   anything else the parties want to talk about?

14:50:37 12          MR. ALY:  Your Honor, Imron Aly here.  We have

14:50:40 13   two issues.  Issue number one is from the January 6th letter

14:50:44 14   to the Court in the claim narrowing, the issue raised there

14:50:46 15   is about the SALT patents being dismissed.  The dispute is

14:50:52 16   whether that should be with prejudice, which is our

14:50:54 17   position, or without prejudice which is plaintiffs'

14:50:57 18   position.  And I would be happy to address that further now,

14:51:00 19   but I'm flagging an issue that I would like to raise.

14:51:02 20          THE COURT:  Okay.  Why don't you raise that when

14:51:02 21   we're talking together during trial.

14:51:10 22          MR. ALY:  Okay.  The second issue we raised is

14:51:10 23   the live witness question.  This is the dispute as to one

14:51:20 24   witness.  We don't know which live witness plaintiffs are

14:51:22 25   calling, but if it is Dr. Tanko which is one of their

14:51:26 1    options, then our issue is how that will work practically
14:51:30 2    because if they call him live and we have deposition
14:51:34 3    designations.  The plaintiffs are saying if they call
14:51:38 4    Dr. Tanko live we would not be able to question beyond the
14:51:41 5    scope and would have to rely on the deposition designations
14:51:44 6    instead.  Right now nobody is being called live so this is
14:51:48 7    not an issue as far as we can tell.  If they're called
14:51:51 8    virtually I guess that's the same issue to be covered that
14:51:54 9    we would be using our deposition designations.  And under
14:51:56 10   the paragraph 48 of the pretrial order it says if a witness
14:51:59 11   is called to testify live, then no deposition designations
14:52:03 12   are allowed.  We wanted to clear up this situation with the
14:52:06 13   Court.
14:52:06 14        THE COURT:  Okay.  I'm looking at my notes.
14:52:14 15   Ms. Bourke said something about the number of witnesses, so
14:52:21 16   who are going to be the live witnesses, live meaning
14:52:27 17   testifying in realtime?
14:52:28 18        Mr. Aly, who are your witnesses?
14:52:31 19        MR. ALY:  Yes, Your Honor, that would be
14:52:33 20   Robertson, Yun and Zhou is how it's pronounced, that's
14:52:38 21   spelled Z-H-O-U.
14:52:40 22        THE COURT:  Okay.  And Ms. Bourke?
14:52:42 23        MS. BOURKE:  Your Honor, we had planned to have
14:52:46 24   Ms. Olesen be a witness, she would be our sole fact witness.
14:52:51 25   We had kept Mr. Tanko in reserve in the event that the Court

14:53:01 1    insisted on the trial going forward live and Ms. Olesen was

14:53:05 2    not able to participate because of her COVID issues.   So

14:53:09 3    that is something I have to check with the witnesses after

14:53:13 4    we get off the call.   And then we have two treating

14:53:19 5    physicians from the U.S. on the method of treatment patents

14:53:24 6    and two --

14:53:27 7               THE COURT:   Give me the names.   Can you give me

14:53:29 8    names so I know.

14:53:31 9               MS. BOURKE:   Sure.   The two witnesses, the two

14:53:33 10    treating physicians on the method of treatment patents are

14:53:38 11    Dr. Neal Shore and Dr. Thomas Keane.   And then there are two

14:53:44 12    witnesses on the '938 patent, the method of manufacture

14:53:49 13    patent from Copenhagen, Knud Jensen and Kaare Rasmussen,

14:53:56 14    both from Copenhagen.

14:53:59 15               THE COURT:   Okay.   So you will have five live

14:54:04 16    witnesses and you have given me six names because it's

14:54:12 17    unclear whether the one witness will be able to testify in

14:54:15 18    light of the COVID situation?

14:54:17 19               MS. BOURKE:   Correct, Your Honor.

14:54:18 20               THE COURT:   Okay.   What is your position if, is

14:54:22 21    it Tanko, Mr., Ms., I don't know, Tanko testifies, what's

14:54:30 22    your thought on the issue that Mr. Aly raised about

14:54:34 23    depositions?

14:54:38 24               MR. ATTAWAY:   I didn't -- Your Honor, this is

14:54:40 25    Daniel Attaway for plaintiffs.   I think the problem here as

14:54:44 1   you know the parties went back and forth for a month with

14:54:46 2   the pretrial order for thirty days we had Dr. Tanko listed

14:54:53 3   as a potential may call in person, and for whatever reason,

14:55:00 4   Fresenius decided that they were only going to list

14:55:04 5   Dr. Tanko as a may call by deposition and not list him as in

14:55:07 6   person.  They listed Dr. Olesen as in person or by

14:55:10 7   deposition may call, which is why we're not really objecting

14:55:14 8   to that subject to them agreeing to follow the Federal Rules

14:55:20 9   of Evidence, but since Dr. Tanko is only listed that they

14:55:23 10  were only going to call him by deposition, if he was called

14:55:27 11  live, they were on notice that he was going to be called

14:55:30 12  live which means they cannot go outside the scope of cross

14:55:33 13  because they did not list him as a potential witness to call

14:55:37 14  live in person.

14:55:39 15          THE COURT:  And so then they're going to have to

14:55:42 16  play me deposition bits from him?

14:55:45 17          MR. ATTAWAY:  Actually, Your Honor, I don't

14:55:49 18  think they would be allowed to play deposition testimony

14:55:51 19  because I believe one of your preferences or procedures in

14:55:52 20  the pretrial order it actually says that you don't play

14:55:55 21  deposition testimony for a witness that appears in person.

14:56:02 22          THE COURT:  Yes, I have had folks do that before

14:56:07 23  for some reason, I can't remember why I allowed that.  But

14:56:12 24  Mr. Aly, so what is the deal here?  You did list Ms. Olesen

14:56:21 25  but you didn't list Mr. Tanko as being live.  Why should you

14:56:25  1   now be allowed to do so?

14:56:27  2          MR. ALY:  Your Honor, we are not going to call

14:56:30  3   Dr. Tanko in our case as a witness, but now if the person --

14:56:33  4   we did have deposition designations for Dr. Tanko so now the

14:56:38  5   question is, if he is called live, then we would like to

14:56:41  6   cross live and beyond the scope if the Court allows, that

14:56:47  7   would be the live testimony and that would be it, but

14:56:49  8   alternatively we would like to agree that we did have

14:56:53  9   deposition designations so even if our cross-examination of

14:56:57 10   Dr. Tanko when he is live is limited to the scope of the

14:56:59 11   direct, we would still need to rely on the deposition

14:57:03 12   depositions that did come in.  And we raised this because of

14:57:08 13   paragraph 48 which is the one that references the issues of

14:57:12 14   having witnesses either be live or designations, but not

14:57:16 15   both.

14:57:17 16          MR. ATTAWAY:  Your Honor, this is Mr. Attaway

14:57:19 17   again.  Again, I would just go back to the fact that they

14:57:22 18   also designated deposition testimony for Ms. Olesen but

14:57:27 19   listed her as a may call in person which obviated this

14:57:31 20   entire dispute, so really we're just holding them, we're

14:57:36 21   asking that the Court hold them to the fact that they knew

14:57:40 22   thirty days before December 15th that we potentially were

14:57:45 23   going to call Dr. Tanko in person and they chose not to list

14:57:50 24   him as a potential in person witness and so therefore --

14:57:55 25          THE COURT:  But you did know that they might

14:57:56 1    call Mr. Tanko by deposition, and you're the one who is in

14:58:05 2    control of whether he's called live.  So essentially you're

14:58:13 3    saying you're the one who is in charge of whether they can

14:58:16 4    use his deposition because you either call him live and they

14:58:20 5    are cut off, or you don't call him live and then they're

14:58:27 6    allowed to use his deposition.

14:58:31 7            MR. ATTAWAY:  Well, actually, Your Honor, if I

14:58:33 8    may, I think if they had listed him as calling him live, we

14:58:37 9    would -- just like they did Dr. Olesen, we wouldn't be

14:58:41 10   having this particular conversation, the conversation --

14:58:43 11           THE COURT:  No, no, let's say I agree with you

14:58:46 12   on the live, that they didn't list him as live, so they're

14:58:50 13   out of luck on that.  But you were on notice that they could

14:58:55 14   use his -- that they might want to use his deposition, and

14:59:01 15   so then it's just a question of my preference where I have a

14:59:04 16   preference that when someone testifies, they do it

14:59:07 17   altogether rather than, you know, you see the deposition,

14:59:11 18   you see a lot of testimony, but that's not a hard and fast

14:59:18 19   rule.  I guess my question is, would you prefer that they be

14:59:22 20   allowed to cross-examine him live and go outside the scope

14:59:26 21   even though they didn't say they were going to do that, or

14:59:30 22   would you prefer we limit the scope of any cross, but allow

14:59:33 23   them to use his deposition?

14:59:40 24           MR. ATTAWAY:  Well, Your Honor, I would say

14:59:42 25   first, I would point you to paragraph 48 of the pretrial

14:59:47 1    order --

14:59:47 2              THE COURT:  I understand.  I get it, I

14:59:50 3    understand, but I'm just trying to figure out what makes

14:59:53 4    sense here.  I get it.  And that is my general preference.

14:59:59 5    But that's not where we are right now.

15:00:02 6              MR. ATTAWAY:  Understood.  Your Honor, if you're

15:00:04 7    not going to hold them to -- you're not going to hold them,

15:00:08 8    if you're going to give them permission to go forward, I

15:00:12 9    would say we would rather them to go outside the scope of

15:00:15 10   the direct, provided that they are following FRE 611 which

15:00:23 11   requires that anything that is outside the scope of the

15:00:27 12   direct on cross-examination be considered as direct

15:00:29 13   testimony by the witness which would then also make it fall

15:00:34 14   under the direct testimony disclosure rule in the present

15:00:40 15   trial order.

15:00:40 16             THE COURT:  That seems fair.

15:00:43 17             Mr. Aly.

15:00:44 18             MR. ALY:  Your Honor, we have two issues with

15:00:46 19   them.  One is it does seem fair, but one is we didn't know

15:00:50 20   which one would be considered beyond the scope or not, so it

15:00:52 21   would be essentially the risk of sending the entire cross

15:00:57 22   outline which maybe that's a risk we'll take.  And then the

15:01:01 23   second issue is a practical one just telling us when the

15:01:01 24   person might be called well in advance so that we could do

15:01:02 25   the disclosure on them.  And those are the two pending

15:01:10 1    requests we have in our last letter on this issue.

15:01:13 2              THE COURT:  Mr. Attaway.

15:01:15 3              MR. ATTAWAY:  Well, for the first point of

15:01:18 4    Mr. Aly, which deals with how much they have to disclose, I

15:01:21 5    mean, that's the risk you take for calling a witness,

15:01:26 6    hostile witness, so they got to disclose what they think

15:01:30 7    they might need to use or they're not going to be able to

15:01:33 8    use it.

15:01:34 9              For the second point, I think we would

15:01:36 10   certainly -- if I remember correctly, the requirement in the

15:01:41 11   pretrial order for witnesses are two days before for

15:01:46 12   identification and one day before for exhibits and

15:01:52 13   demonstratives.  That may be off by a little bit.  I think

15:01:57 14   we can all agree to give opposing counsel twenty-four hours

15:02:00 15   prior to when they would need to disclose that the witness

15:02:04 16   will be called, so assuming I'm correct and the requirement

15:02:08 17   starts forty-eight hours before the day of testimony we

15:02:11 18   would give notice three days before that we were going to

15:02:15 19   call the witness.

15:02:18 20             THE COURT:  That all seems rationale.

15:02:20 21             Mr. Aly.

15:02:22 22             MR. ALY:  Your Honor, this is Imron Aly.  No

15:02:25 23   problem with the time component.  As to the scope component,

15:02:29 24   I think that's basically they're saying we would have to

15:02:32 25   give them everything since we cannot know the scope.

15:02:34 1              THE COURT:  Well, you don't have to give
15:02:36 2    everything because you do have a judge in the room who will
15:02:41 3    make a determination as to whether it's fairly within what
15:02:45 4    you could have expected on the cross.  But I am going out on
15:02:48 5    a limb here and you're being allowed to cross-examine
15:02:52 6    someone live who you didn't list as live in the pretrial
15:02:56 7    order, so I think that putting the burden on you to make
15:03:00 8    sure you disclose adequately is fair.
15:03:03 9              Okay.  Anything else that we have from the
15:03:06 10   defendants' side?
15:03:08 11             MR. ALY:  Not from the defendants, Your Honor.
15:03:10 12             THE COURT:  Plaintiffs?
15:03:12 13             MS. BOURKE:  This is Mary Bourke, Your Honor.
15:03:14 14   No, I don't think so.  I think when we go remote, we have to
15:03:20 15   always talk about whether we need to send witness books to
15:03:23 16   the Court and the exchange of hard copy exhibits for
15:03:26 17   witnesses that are overseas.
15:03:28 18             THE COURT:  That is actually a good point.  So
15:03:32 19   even when we have live trials these days, I do not accept
15:03:39 20   paper copies or binders of exhibits.  So what's you're going
15:03:42 21   to have to do is -- I usually say that in my checklist here.
15:04:02 22   Hold on.  Let me see if I have it in here.  Okay.  I found
15:04:46 23   it.
15:04:49 24             So what you need to do is probably either the
15:05:01 25   Friday before trial if we start on Monday or the Monday

15:05:04 1   before trial if we start on Tuesday, provide electronic

15:05:09 2   versions of all trial exhibits on the exhibit list to us in

15:05:13 3   a single folder.  And you can coordinate this with

15:05:21 4   Mr. Buckson, but I want to have all of the trial exhibits

15:05:24 5   electronically on the first day of trial.  The exhibits need

15:05:28 6   to be named with their exhibit numbers, JTX, PTX, or DTX,

15:05:35 7   and they should appear in a folder in ascending order from

15:05:38 8   the exhibit.  So all of the exhibits like JTX-1 through 10,

15:05:43 9   PTX-1 through 10, DTX-1 through 10, so that I can easily

15:05:48 10  find them if I want something.

15:05:51 11           Additionally, every morning the parties need to

15:05:55 12  provide both Mr. Buckson and Ms. Welham electronically with

15:06:01 13  witness folders for any direct examinations that will happen

15:06:04 14  that day.  And the other party needs to provide us

15:06:10 15  electronically with witness binders for any

15:06:14 16  cross-examinations that will occur.  You don't have to send

15:06:18 17  your cross binders to the other side if you don't want to

15:06:23 18  when you send them to us in the morning, but you need to

15:06:26 19  send us those binders so basically in front of me I'm going

15:06:31 20  to have electronically all of the exhibits in case I need to

15:06:35 21  go find something, but for each witness I will have the

15:06:38 22  equivalent of a direct binder and a cross binder in an

15:06:44 23  electronic folder.

15:06:47 24           Does that make sense?

15:06:52 25           MR. ATTAWAY:  Your Honor, this is Daniel

15:06:54 1    Attaway.   I just have one question for the whole set, the

15:06:57 2    whole universe of exhibits.   So you want them in a single

15:07:01 3    exhibit folder or do you want them in a JTX, a PTX and a DTX

15:07:07 4    folder, or do you have a preference?

15:07:09 5            THE COURT:   I think that usually when I -- and

15:07:13 6    you should work with Mr. Buckson on this, but usually when I

15:07:17 7    open the folder, usually when I open the folder I can find

15:07:25 8    any exhibit that I want.   So what I'm thinking is if I'm

15:07:37 9    looking for an exhibit because we're talking about something

15:07:40 10   and a different exhibit comes up, I want to only be able to

15:07:44 11   click on one folder which is my entire exhibit folder.

15:07:50 12           MR. ATTAWAY:   Understood, Your Honor.   We'll do

15:07:52 13   it as one folder.

15:07:54 14           THE COURT:   Hold on one second.   Let me check

15:07:56 15   with my team as to what I want.   I am told that as long as

15:08:22 16   you clearly label them like PTX-1, JTX-1, DTX-1, you can

15:08:28 17   send them however you want because we have to download them

15:08:31 18   anyway and my folks will put them in whatever order I want.

15:08:35 19           MR. ATTAWAY:   Understood, Your Honor.

15:08:37 20           THE COURT:   Okay.   Anything else?

15:08:42 21           MR. ALY:   Your Honor, some verification on this

15:08:42 22   last point on the submission one, I'm sure includes

15:08:52 23   demonstratives as well as in the electronic submissions.

15:08:52 24           THE COURT:   Yeah, that's actually very helpful

15:08:52 25   because I did have a trial where they weren't giving me the

15:09:01 1    demonstratives and I kept looking for them and I couldn't

15:09:03 2    find them.  Yes, please include demonstratives.  You don't

15:09:06 3    have to include the demonstratives -- I mean, the one folder

15:09:11 4    that is comprehensive, JTX, PTX, whatever, that has come in

15:09:16 5    before trial.  The demonstratives can be included in the

15:09:20 6    individual witness files, if you want.

15:09:23 7                MR. ALY:  Yes, Your Honor.  And the second

15:09:26 8    format question, would that be preferred as an FTP link or

15:09:32 9    as a hard drive?  I'm assuming because of the size, the

15:09:35 10   whole set that will be on the first will be by hard drive,

15:09:39 11   but the daily ones later might be only by hard drive or FTP

15:09:44 12   link at the Court's preference.

15:09:46 13               MR. ATTAWAY:  And Your Honor, Mr. Attaway.  I

15:09:48 14   would just add very quickly that one of the exhibits is

15:09:52 15   about a gig-and-a-half, so if that is --

15:09:57 16               THE COURT:  I'm sorry, your voice kind of

15:09:59 17   dropped out there for a second.  Could you repeat that,

15:10:02 18   please?

15:10:02 19               MR. ATTAWAY:  One of the exhibits is very large,

15:10:04 20   it has a very large file size, if that influences Your

15:10:08 21   Honor's decision as to how she would like to receive them.

15:10:12 22               THE COURT:  I am told that FTP is helpful.  So

15:10:16 23   you can send us things through an FTP site.  If we have any

15:10:24 24   issues I'm sure someone will call you and we'll figure it

15:10:30 25   out.  Does that help?

15:10:35  1          MS. BOURKE:  Yes, Your Honor.  This is Mary

15:10:36  2  Bourke.  I do have one question.  On the cross exhibits, I

15:10:41  3  understand that they should be given to the Court, but what

15:10:46  4  about whether the remote witnesses can have hard copies of

15:10:51  5  cross exhibits that they don't open until they are on cross?

15:10:56  6  That's the way I have done it in my other remote trials.

15:10:59  7          THE COURT:  With respect to what you give the

15:11:02  8  witnesses, whatever works for you all is fine with me.

15:11:07  9          MS. BOURKE:  Okay.  Thank you, Your Honor.

15:11:12 10          I have nothing further.

15:11:16 11          THE COURT:  All right.  If you guys think of

15:11:20 12  anything else, contact Ms. Welham or Mr. Buckson.

15:11:24 13          When do you think you'll be able to tell us --

15:11:27 14  we may have to reorganize a few things with that week if we

15:11:31 15  don't go forward next week.  When do you think you'll be in

15:11:34 16  a position to tell us?

15:11:35 17          MS. BOURKE:  Your Honor, this is Mary Bourke.

15:11:37 18  We're going to need at least until tomorrow because it is

15:11:41 19  9:00 p.m. I think in Europe right now, so I don't know

15:11:42 20  whether I'm going to be able to get in touch with everybody

15:11:47 21  that's on the European continent until tomorrow.

15:11:51 22          THE COURT:  Mr. Aly, any timing issues on your

15:11:52 23  side?

15:11:57 24          MR. ALY:  No, we expect to get something today.

15:12:02 25          THE COURT:  Why don't you all talk and try to

15:12:06 1    get me something by the end of the day tomorrow.

15:12:10 2    Ms. Bourke, if you have issues getting in touch with folks,

15:12:14 3    let us know and we can expect it on Thursday.

15:12:16 4                    MS. BOURKE:  Very fine.  Thank you, Your Honor.

15:12:18 5                    THE COURT:  Thank you everyone.  Enjoy the rest

15:12:20 6    of the day.

7                         (Remote pretrial hearing concluded at 3:12 p.m.)

8

9              I hereby certify the foregoing is a true and
       accurate transcript from my stenographic notes in the proceeding.
10

11                                    /s/ Dale C. Hawkins
                                    Official Court Reporter
12                                    U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25